# Wytheville.

CHESAPEAKE AND OHIO RAILWAY CO. v. PARIS' ADMINISTRATOR.

June 3, 1910.

1. DEMURRER TO EVIDENCE—*Conflict of Evidence.*—On a demurrer to· the evidence, evidence of the demurree which conflicts with that of the demurrant must be taken as true.

2. APPEAL AND ERROR—*Verdicts—Conflict of Evidence.*—Although the· court may be of opinion that the jury should have found a different verdict, yet if the evidence is conflicting the verdict of the jury cannot be disturbed if there was sufficient evidence to sustain it.

3. CARRIERS—*Alighting from Moving Trains—Assistance of Brakeman—Accident.*—It is the duty of a brakeman on a passenger· train to attempt to protect a passenger from damage incident to stepping off a moving train, and if perchance disaster attends his *bona fide* efforts in that regard, the master cannot be held answerable in damages for the fortuitous result.

4. NEGLIGENCE—*Question of Law and Fact.*—Negligence, whether contributory or otherwise, is a mixed question of law and fact.· If the facts be doubtful, or about which reasonable men may differ, their determination becomes a question for the jury; but where the facts are ·undisputed, the law applicable to them is a question for the court.

5. CARRIERS—*Negligence—Prematurely Starting Train—Invitee Stepping Off—Proximate Cause.*—Although a railroad company may have been negligent in prematurely starting its train, if an invitee, rightfully on the train, voluntarily attempts to alight therefrom while it is in motion and is injured, his act is the proximate cause of his injury, and he cannot recover. In that act the railroad company had no part.

6. Carriers—*Prematurely Starting Train—Invitee Stepping Off—Proximate Cause—Invitee Without Fault.*—If a railroad company prematurely starts one of its trains it is an act of negligence for the proximate results of which it is liable to one who is injured thereby, but as against an invitee on the train who seeks to alight therefrom after it has gotten in motion, its negligence has ceased to operate, and if, without the knowledge of the company, he voluntarily attempts to alight and, in consequence thereof, is injured, there can be no recovery, as his own act is the proximate cause of his injury. It is immaterial whether he was negligent or not. The negligence of the company having ceased to operate there could be no recovery against it on that account, and if he also was free from fault then the injury must be classed as an accident.

7. Carriers—*Opportunity to Alight—Stepping from Moving Train—Diminishing Damages.*—Where a passenger has been wrongfully carried by his station, or has not been given a reasonable time to leave his train, it is his duty to submit for the time to the situation, secure in his right to recover ultimately for the inconvenience he may suffer, but he has no right to step from a moving train and engraft the consequences of his own rash act upon the antecedent negligence of the company and recover for both. It is the duty of an injured party to diminish by reasonable care the consequences of the wrong he has suffered, in the interest of the wrongdoer.

8. Carriers—*Negligence—Intervening Responsible Cause—Stepping from a Moving Train.*—If a railroad company negligently fails to give an invitee who comes on its train at a station a reasonable opportunity to leave the train before it starts, and he steps off the train while it is in motion and is injured, it cannot be said that the injury is the natural and continuous sequence, unbroken by any new and independent cause, of the negligence of the company. There is the intervening act of a responsible agent, and that agent is the invitee himself.

Error to a judgment of the Circuit Court of Augusta

county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*R. L. Parrish* and *J. M. Perry*, for the plaintiff in error.

*H. St. George Tucker* and *Charles & Duncan Curry*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

This is the second time this case has been before this court. In the opinion upon the former writ of error, the circumstances under which the death of the plaintiff's decedent occurred, as they then appeared from the record are stated, and upon the case then made it was held that the verdict of the jury against the railway company could not be sustained, and the cause was remanded for a new trial. See 107 Va. 408-411, 59 S. E. 398. Upon the next trial there was a demurrer to the evidence and judgment for the plaintiff again. To that judgment this writ of error was awarded.

The duty of a railway company to a person who, in conformity to a custom acquiesced in by the carrier, goes to a railway station to assist a passenger in entering or leaving the train is declared. It was held that such a person is an invitee to whom the carrier owes the duty of ordinary care to see that he is not injured, and that, if he enters the train and his purpose is known, it is the duty of the carrier to give him a reasonable time within which to leave it, but if his purpose is not known and there are no circumstances to put the carrier upon notice, then the carrier is not bound to hold the train till he has had time to alight, or to notify him before the train starts.

Upon the former writ it was not shown that the railway company had notice that the deceased was merely assisting

his daughter on the train when he entered the car. The want of such notice, direct or circumstantial, was held on the former writ to relieve the railway company from the charge of negligence in starting its train before the plaintiff's decedent had gotten off. Upon the last trial, on this point the case was different. Two witnesses testified that the plaintiff's decedent, when he entered the car, inquired of a brakeman if he would have time to take his daughter's dress-suit case into the car, set it down and get off before the train started, and was told that he would, to "go ahead." That it had such notice, or that there was any such inquiry made, is denied by the railway company, and the preponderance of evidence, direct and circumstantial, is in favor of its contention; but on a demurrer to evidence the testimony of the two witnesses to the contrary must be taken as true. The evidence of the plaintiff tended further to prove that the deceased, when he assisted his daughter upon the train, found her a seat about the middle of the car, placed the dress-suit case on the seat with her, told her good-bye, and started to leave the train, but was delayed in getting off because of the crowded condition of the car and the narrow passage through which he had to or did pass in making his way to the platform of the car; that when he reached the platform it was crowded, and persons were still getting on the train with bundles; that he asked the brakeman not to start the train until he could get off; that he was diligent in his effort to get off; that the day of the accident was Saturday before Christmas, which came on Monday; that the train was a local train, crowded when it reached Staunton, many of whose passengers were getting off, and that a large crowd there boarded the train; that the train's usual stop at that station was five minutes, and that it only stopped the usual time that day; that although the train was moving slowly when the deceased got on the steps to alight, he could have done so successfully but for the interference of a brake-

man, who grabbed him and then let him go, unbalancing him
and thus preventing him from alighting safely.

Upon all material points the evidence of the railway com-
pany is directly in conflict with that of the plaintiff, and
upon most of them preponderates. While upon the whole
evidence the jury, as it seems to us, ought to have found a
verdict for the defendant, yet as the evidence was conflicting
the verdict of the jury cannot be interfered with, if there was
sufficient evidence to sustain it.

We do not think the act of the brakeman, as testified to
by the plaintiff's witnesses, makes out a case of negligence
against the railway company. As was said in the opinion of
the court on the former writ of error, it was the brakeman's
duty to have attempted to protect the plaintiff's intestate
from damage incident to his stepping off a moving train, and
if perchance disaster attended his efforts in that regard, the
master cannot be held answerable in damages for the for-
tuitous result.

The case made by the evidence, it may be conceded, shows
that the railway company was negligent in failing to give
Paris a reasonable time within which to leave the train. The
fact remains, however, that in attempting to alight from a
moving train he was the author of his own wrong.

Negligence, whether contributory or otherwise, is a mixed
question of law and fact. If the facts be doubtful, or about
which reasonable men may differ, their determination becomes
a question for the jury; but where the facts are undisputed,
the law applicable to them is a question for the court.

The decided cases with reference to alighting from moving
trains are almost without number. Many of them deal with
passengers alighting from street cars, and it is almost uni-
versally held that to alight from a slowly moving street car
is not negligence *per se*. Where a passenger is invited to
alight by an officer of the train, or is told that he may do so
in safety, the cases hold that circumstance to justify his ac-

tion, provided the train has not attained such a speed that the danger would be obvious. If he is induced to leap from the train by a well founded apprehension of peril to life or limb, induced by occurences which might have been guarded against by the utmost care of the carrier, he is entitled to recover for any injury he may have sustained thereby, although no injury would have occurred if he had remained quiet; and we admit that there are cases which have held the carrier responsible where there was no invitation extended, no assurance given, and no peril apprehended. But we are of opinion that the just and proper rule of decision is that which we understand to prevail in this State.

In *Richmond & Danville R. Co.* v. *Morris*, 31 Gratt. 200, it appears that it was night when the train arrived at the station B.; that Morris had fallen asleep, and when approaching the station the conductor awakened him, telling him that they were at B. The train went a short distance beyond the freight house and reception room without stopping, and when the engine reached the frog on the west side of the freight house and reception room it stopped, and the conductor seeing Morris still in the caboose asleep, again aroused him. The train stopped about a minute, and Morris could then have gotten off whilst the train was not in motion. The conductor then went to the other end of the car, and looking back saw that Morris did not get up. He returned, shook Morris and told him to get up, or get off, he was at B. Immediately after waking Morris the last time, the conductor went out at the end of the caboose with his lantern in his hand and stood on the stationary platform about two and a half feet from the platform of the car; the train commenced backing, and Morris got up and walked out to the end of the car and jumped off, not knowing, as he said, which way the car was going, and the caboose car and several others passed over him, injuring him severely. The point where Morris jumped off was opposite the platform, which extended thirty-five steps

west, and a much greater distance east of the pump-house, and was that part of the platform at which passengers going east got off, and was in good condition. It was a dark, drizzly night, and the only lights at the station were two lanterns, one in the hands of the conductor and the other in the hands of a servant of the company at the station. Upon these facts this court held, that "the company was guilty of culpable negligence, and this negligence was the proximate cause of Morris' injury; that the conductor should not have put the train in motion until Morris could leave the car, or, if put in motion, he should have cautioned him not to attempt to get off until the train was stopped. Instead of this he told him to get off, and the train immediately commenced backing. The company was also in fault in not having stationary lights at the place, and this made it all the more incumbent on the conductor to exercise more than usual care and caution in letting off passengers. But whilst the injury sustained by M. is directly traceable to the culpable negligence of the company, the negligence or absence of ordinary prudence and caution on the part of M. contributed to his injury; and he is not entitled to recover of the company damages for the injury he sustained. One who by his negligence has brought an injury upon himself, cannot recover damages for it. Such is the rule of the civil and common law. A plaintiff in such cases is entitled to no relief."

It is obvious, we think, that the case just cited was a far stronger one in behalf of the passenger than the one under consideration. The court rightly characterized the conduct of the conductor as culpable negligence, and held that this negligence was the proximate cause of the injury to Morris; but Morris was in a place of safety, and in attempting to alight from a moving car was held to have brought the injury upon himself, and was therefore not entitled to relief. Judge Burks, who delivered the opinion of a unanimous court, cites the case of *Railroad Co.* v. *Aspell*, 23 Pa. St. 147, 62 Am. Dec.

323, and quotes with approval the following language of Chief Justice Black: "It has been a rule of law from time immemorial, and is not likely to be changed in all time to come, that there can be no recovery for an injury by the mutual fault of both parties. When it can be shown that it would not have happened except for the culpable negligence of the party injured concurring with that of the other party, no action can be maintained. A railroad company is not liable for an accident which the passenger might have prevented by ordinary attention to his safety, even though the agents in the train are also remiss in their duty. . . . From these principles it follows very clearly that if a passenger is negligently carried beyond the station where he intended to stop and where he had a right to be let off, he can recover compensation for the inconvenience, the loss of time, and the labor of travelling back; because these are the direct consequences of the wrong done to him. But if he is foolhardy enough to jump off without waiting for the train to stop, he does it at his own risk; because this is gross negligence, for which he can blame nobody but himself. If there be any man who does not know that such leaps are dangerous, especially when taken in the dark, his friends should see that he does not travel on a railroad."

Continuing, Judge Burks says further: "It is to be borne in mind, however, that if a passenger is induced to leap from the carriage, whether by coach or railway, by a well founded apprehension of peril to life or limb, induced by occurrences which might have been guarded against by the utmost care of the carriers, he is entitled to recover for any injury he may sustain thereby, although no injury would have occurred if he had remained quiet."

In *Jammison* v. *Chesapeake & O. R. Co.*, 92 Va. 327, 23 S. E. 758, 53 Am. St. Rep. 813, it was held, that if a passenger train fails to stop at a station to which a passenger has purchased a ticket, it is the duty of the passenger to retain his seat until he arrives at the next station

at which the train stops; and, if he feels aggrieved, to institute his action against the company for any loss or injury he may have sustained by reason of the failure to stop the train at the proper station. But if he fails to do this, and, in passing from one coach to another in seach of the conductor to get him to stop the train, he is thrown from the train and injured, his negligence is the proximate cause of the injury, and he cannot recover damages of the company therefor."

The person injured in this case was upon the train where he had the right to be as an invitee. He was in a place of safety. Had he elected to remain upon the train, his right of action was complete for whatever inconvenience he had suffered, or might suffer, as the direct consequence of the railroad company's negligence. But when he undertook to alight from the train, the negligence of the railroad company had ceased to operate, and it was the voluntary act of Paris which became the proximate cause of his injury.

As was said by this court in *C. & O. Ry. Co.* v. *Wills,* 68 S. E. 395, *ante,* "the direct and efficient cause of the injury for which this suit was brought was the alighting from the train while in motion. In that act the railroad company had no part."

If it were conceded that Paris was not guilty of negligence in alighting from the train, we do not perceive that his case would be strengthened, for his act of alighting was the proximate cause of the injury. In order to recover he must show negligence upon the part of the railroad company as the proximate cause of the injury for which he sues. He cannot recover merely because he was not guilty of a negligent act; and in this case the negligence of the railroad company had ceased to operate—was exhausted—and his alighting from the train, whether under conditions that convict him of negligence or not is immaterial. If the act of the railroad was a mere condition and not the proximate and efficient cause of the injury, and if Paris in alighting from the train, under the cir-

·cumstances disclosed in this record, was free from fault and .guilty of no negligence, then the occurrence must be classed ;as an accident for which there can be no recovery.

It has often been held that the act of a responsible agent, intervening between the negligence of the railway company ;and the injury sued for, relieves the railway company of responsibility. If the intervening act of a third person has ·that effect, how much more where the person injured was himself the author of his own wrong.

But it is said that if this view prevail, and a person injured while leaving a moving train under circumstances similar to those under consideration is denied the right to recover for such injury, and is left to compensation for damages for the .inconvenience, loss of time and the labor of travelling back, ·which are the direct consequences of the act of the railroad ·company, the recovery in many instances would ,not adequately redress the wrong suffered. To this we reply that experience does not warrant the apprehension that courts and .juries may not safely be trusted to do full justice to the citi-:zen in such controversies: and that, even if this were not so, ·the difficulty or the inability to obtain full compensation for ·an admitted wrong cannot be made the basis for a recovery ;against a railroad company in excess of just compensation for the injury which its negligence had occasioned, measured by ·the ascertained and established rules of law in such cases.

There is another view, which we think is not without ·merit. Where an injury is inflicted by a negligent act, it is the duty of the party injured by reasonable care to diminish ·the consequences of the wrong he has suffered, in the interest ·of the wrongdoer. This is not merely good law but good ·morals, and flows from that rule which has the highest possi-'ble sanction, that we should do unto others as we would have ·others do unto us.

Where a passenger has been wrongfully carried beyond his ;station, or has not been given a reasonable time to leave a

train, this principle requires him to submit for the time to the situation, secure in his right ultimately to recover for the inconvenience he may suffer, but forbids him to step from a moving train, thereby imperiling his life and limb, and then turn around and engraft the consequences of his own rash act upon the antecedent negligence of the railroad and recover for both.

For a full discussion of the doctrine of remote and proximate cause, we refer to *C. & O. Ry. Co.* v. *Wills, supra,* and the authorities there cited. As was said in that case, there is no evidence that any agent of the company directed, advised, encouraged, or even had knowledge of the intention of plaintiff's intestate to alight from the train, except the brakeman, whose conduct was held not to fix negligence upon the railroad company. There was in this case, as in that, the intervening act of a responsible agent, that agent being the plaintiff's intestate himself; and while the railroad company was guilty of negligence in not giving a sufficient time for Paris to alight from the train, it cannot be said that the injury for which he sues was the natural and continuous sequence, unbroken by any new and independent cause, of that negligent act.

For these reasons we are of opinion that the judgment of the circuit court should be reversed, and this court will proceed to enter such judgment as the circuit court ought to have rendered.

Buchanan, J., *dissenting*:

I cannot concur in the opinion of the court, in so far as it holds that the plaintiff's intestate in attempting to get off the train was guilty of contributory negligence, as a matter of law; nor in the general rule laid down in that opinion, that it is *per se* negligence in every case for a person to attempt to get off a moving train, except under the circumstances pointed out in the opinion. Whether or not the conduct of plaintiff's intes-

tate, under the circumstances disclosed by the record, was negligence constituting the proximate cause of his death was, in my opinion, a question for the jury, to be determined from all the facts and circumstances of the case. It is a mistaken view, as it seems to me, to take the single act of stepping off the moving train, and inquire if it alone constituted the proximate cause. The combined effect of the act of the plaintiff's intestate and the wrongful and unlawful conduct of the railroad company, which caused or induced him to attempt to step off the train after it was in motion, ought all to be considered in determining the question of proximate cause. Negligence and contributory negligence are mixed questions of law and fact, and are ordinarily questions for the jury and not for the court.

It is the province of the jury, as was said in *B. & O. Ry. Co.* v. *Griffith*, 159 U. S. 603, 611, 16 Supt. Ct. 105, 108, 40 L. Ed. 274, "to note the special circumstances and surroundings of each particular case, and then to say whether the conduct of the parties in the case was such as would be expected of a reasonably prudent man under a similar state of facts."

"Negligence," said Judge Burks in *Carrington* v. *Ficklin*, 32 Gratt. 670, 676-7, "cannot be conclusively established by a state of facts upon which fair-minded men may well differ."

I do not understand, as stated in the majority opinion, that it is *per se* negligence in this State to get on or off of a moving train, except in cases under the circumstances pointed out in that opinion. Neither the *Jamison case*, 92 Va. 327, 23 S. E. 758, 53 Am. St. Rep. 813, nor the *Morris case*, 31 Gratt. 200, cited as settling the rule in this State, involved that question. In the first-named case, the plaintiff was not injured in attempting to get on or off a moving train. The *Morris case* was a case of gross negligence on the part of the passenger, and while there may be language used in both cases broad enough to sustain the state-

ment in the majority opinion, such language was unnecessary for a decision of those cases, and not binding in a case like this where the facts are entirely different; for the language of an opinion must always be construed in the light of the facts of the case in which it was rendered, and is not binding as a precedent in a subsequent case unless the case called for its expression. *Griffin* v. *Woodford*, 100 Va. 473, 41 S. E. 949.

In the *Morris case*, the court says that time sufficient was given the person "according to the proof, to leave the car while the train was standing; and after he was cautioned the last time, if he had at once followed the conductor, who stepped on to the platform with the lantern in his hand, he might have reached the platform with equal convenience and safety, or if on tarrying longer and finding the train in motion, when told to get off he should either have declined, as he had the right to do, to obey the direction, or if he chose to take the risk of getting off under the circumstances, he should have gotten off on the stationary platform, which as shown was alongside of the train. Such would have been the dictates of common prudence. He did not heed them, but according to his statement he got up, walked to the end of the car and 'jumped off,' not knowing nor seeking to know in which direction the train was moving. This would seem to be something more than the want of ordinary prudence and caution. It appears to be gross negligence—extreme recklessness."

It is clear that a case like that did not call for any expression of opinion which would control a case like this.

Neither did the opinion of the Supreme Court of Pennsylvania in the *Aspell case*, 23 Penn. St. 147, 62 Am. Dec. 323, cited and relied on in the majority opinion in this case and in the *Morris case*, require a decision of the question involved in this case. In that case, when the passenger, as Judge Black says in his opinion, "was about to jump, the conductor and the brakeman entreated him not to do it, warned him of his danger, and assured him that the train

should be stopped and backed in the station. If he had heeded them he would have been safely let down at the place he desired to stop at, in less than a minute and a half. Instead of this, he took a leap which promised him nothing but death; for it was made in the darkness of midnight, against a woodpile close to the track, and from a car going probably at the full rate of ten miles an hour."

Not only was the language used in that case not necessary to its decision, but in a later case in the same court—*Johnson* v. *West Chester, &c. Ry. Co.*, 70 Penn. St., 357, where the passenger attempted to get on a moving train, in which the trial court had instructed the jury that, "If the train was distinctly running on the track when the plaintiff attempted to enter, he was guilty of negligence and could not recover," that instruction was held to be erroneous, and that "it was for the jury to say whether the danger of boarding the train when in motion was so apparent as to make it the duty of the passenger to desist from the attempt." The language of Judge Agnew in delivering the unanimous opinion of the court in that case is so apt I cannot do better than quote it as expressing my views, especially as the earlier decision of that court in the *Aspell case* is quoted and relied on to sustain the majority opinion in this case.

In that case the plaintiff had not been given sufficient time to get on the train before it began to move. "Now, though the train," says the court, "was distinctly in motion, so that a bystander, cool and unconcerned, could see it visibly running on the track, are we to say, as a matter of law binding on the jury, that a passenger having a right to go on the train and seeing himself about to be left improperly by the wayside, is guilty of culpable negligence if he should essay to reach his destination, no matter how slow the motion in running might be or how little danger was apparent to him? He may be guilty of negligence, but of this the jury should judge under the circumstances. He may not set his life or limbs on the

hazard of a leap at the running train, as the judge emphatically said, and doubtless if such were the character of the attempt it would be negligence. The expression 'leaping at a running train,' denotes a higher effort and less consideration on the part of the traveller than merely attempting to board a car under way. . . . In discussing the conduct of the passenger, we are not to lay out of sight the wrong of the company *in its influence upon his mind and act.* He may have strong motives to reach his destination—indeed, no man but must feel, and feel strongly, at being left by the wayside; he is conscious of his right to go aboard and naturally becomes excited at the sight of the moving train, perhaps is alarmed, and in some degree confused. If the train is running slowly and the danger is not apparent to him, what so natural as that he should hurry to reach the train and get aboard? But if we lay down the inexorable rule for this and every other case, that whenever the train can be seen distinctly running it is legal negligence to attempt to get on, we set a premium on the wrong of the company which influenced the very act itself. To say that whenever the motion of the train is so distinct that bystanders can see it running along the track, the passenger is to be as cool and unconcerned as they, fold his arms and say to himself, 'I'll sue you for this breach of contract in leaving me here,' is to him bitterness itself. He may be a stranger and know not where to find accommodation; the severity of the winter may surround him, or the heat of summer oppress him; the elements may war against him, and night or approaching darkness may heighten his alarm; or, if no stranger, his business may be urgent, his family may require his presence, his health may be poor, his means limited, his desire to reach his destination overpowering, and a hundred reasons may influence him to go on. Now are we to say that the wrong which has caused his mind to be excited and aroused his fears, which confuses him and has made him less cool and calculating than those who are standing by and can look upon

the departing train without emotion, is not to be taken into the account in considering his act? What caused his state of mind? Not his own carelessness or breach of duty as a passenger, but the illegal and wrongful act of the carrier. Surely it does not lie in the mouth of the railroad company to say to him, the law will take no account of our breach of duty in its effect upon you. You ought not to have suffered it to move you, but if you saw our train was moving along the track, the slack taken up, the train stretched out and the cars under way, so that anyone else could distinctly see it running, you ought to have looked upon our leaving you on the wayside with perfect coolness, made no effort to go, and sued us for our breach of the contract of carriage—no matter how slow the motion of the train was, nor how little danger in getting on was apparent to you, or what the state of your mind caused by our wrongful act, it is not a question for the jury under the circumstances, but the law holds you guilty of culpable negligence in the attempt to board the train and we are allowed to go free. This is too stringent a rule for the case. Culpable negligence is the omission to do something which a reasonable, prudent and honest man would do, or the doing of something which such a man would not do under all the circumstances surrounding the particular case. Shearman & Redfield on Negligence; *Key* v. *Penna. Railroad Co.*, 65 Pa. 273, 3 Am. Rep. 628. Instead, therefore, of the rule laid down by the learned judge, he should have left it to the jury to say, under all the circumstances in evidence, whether the danger of boarding the train, when in motion, was so apparent as to have made it the duty of the plaintiff to desist from the attempt. There is no objection to the court assisting the jury in the performance of their duty by reminding them of the danger of boarding a train in motion, and the caution and care that passengers should use, as well as of the duties of the carriers and the influence of their wrongful acts in producing the catastrophe.

But railroad companies are bound to remember that they owe duties to the public, for whose benefit their charters have been granted, and, therefore, should not be lightly loosed from the effects of their own wrongful acts."

In *Filer* v. *N. Y. Central R. Co.*, (a steam railroad), 49 N. Y. 47, 10 Am. Rep. 327, cited with approval by this court in the case of *Newport, &c., Co.* v. *McCormick*, 106 Va. 517, 521, 59 S. E. 281, in which last-named case it was held that it was not *per se* negligence to step from a moving street car, it was said by the Court of Appeals of New York: "That there was more hazard in leaving a car while in motion, although moving very slowly, than when it is at rest is self-evident. But whether it is imprudent and careless to make the attempt depends upon circumstances; and where a party by the wrongful act of another has been placed in circumstances calling for an election between leaving the cars or submitting to an inconvenience and further wrong, it is a proper question for the jury, whether it was a prudent and ordinarily careful act or whether it was a rash and reckless exposure of the person to peril and hazard."

The rule laid down in those cases seems to me to be the correct one, sustained by the better reason and in accord with the weight of authority. See *New York, P. & N. Ry. Co.* v. *Cuilbourn*, 69 Md. 360, 16 Atl. 208, 9 Am. St. Rep. 430, 1 L. R. A. 541; *Doss* v. *M. K. & T. R. Co.*, 59 Mo. 27, 37, 21 Am. Rep. 371; *Strand* v. *C. & W. R. Co.*, 64 Mich. 216, 219, 31 N. W. 184; *Cent. Railroad, &c.* v. *Miles*, 88 Ala. 256, 261-2, 6 South, 696; *Cumberland Valley R. Co.* v. *Mangans*, 61 Md. 53, 60-63, 48 Am. Rep. 88; *Carr* v. *Eel River, &c. R. Co.*, 98 Cal. 366, 33 Pac. 213 (note), 21 L. R. A. 363-365; *Mills* v. *Ry. Co.* 94 Tex. 242, 59 S. W. 874, 55 L. R. A. 497; *L. & N. R. Co.* v. *Crunk*, 119, Ind. 542, 21 N. E. 31, 12 Am. St. Rep. 443; *Atchison, &c. Ry. Co.* v. *Holloway*, 71 Kan. 1, 80 Pac. 31; *Sanders* v. *Southern Ry. Co.*, 107 Ga. 132, 32 S. E. 840;

Note to *Walker* v. *Vicksburg, &c., R. Co.*, 17 Am. St. 422-429, and cases cited; 3 Hutch. on Car. (3rd ed.), sec. 1179, and cases cited in note 9; 2 Shear and Red. on Neg., (5th ed.), sec. 520.

The plaintiff's intestate in this case, according to the plaintiff's evidence, had the right to be upon the train; he was told that the train would remain there long enough for him to find his daughter a seat and deposit her baggage and get off; he was diligent in what he had to do on the train, and in his effort to leave it. He was going down the steps of the coach almost in the very act of getting off on the station platform, in the daytime, when the train, by the wrongful and unlawful act of the defendant, began to move slowly. Whether under these circumstances it was negligence to attempt to get off of the train was, in my judgment, a question about which reasonably fair-minded men might differ, and was therefore a question for the jury and not for the court.

*Reversed.*

Whittle J., concurs with Buchanan, J.