# 𝔚𝔶𝔱𝔥𝔢𝔟𝔦𝔩𝔩𝔢

## THE CHESAPEAKE AND OHIO RAILWAY COMPANY v. S. O. BUTLER.

June 8, 1942.

Record No. 2516.

Present, All the Justices.

The opinion states the case.

*Leake & Spicer*, for the plaintiff in error.

No appearance for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

S. O. Butler, plaintiff in the court below, brought an action against the defendant, The Chesapeake and Ohio Railway Company, to recover damages for personal injuries received while alighting from a train of defendant. On the trial of the issue upon a plea of not guilty, the jury awarded plaintiff damages in the sum of $500. Judgment was entered by the court.

The plaintiff, a farmer, sixty-five years of age, had lived near Carysbrook, in Fluvanna county, for about twenty years. During that time, he had been accustomed to traveling by train from Carysbrook to Palmyra, two intermediate points, four miles apart, on the Virginia Air Line branch operated by the defendant. On the morning of June 10, 1939, he proceeded to Carysbrook, bought a ticket for Palmyra, and proceeded to board defendant's combined passenger and freight train for that destination. This was between 9:00 and 10:00 A. M. The passenger coach was at the rear of the train, behind a number of freight cars. There were two other passengers going to Palmyra. After the train had passed Rockaway, the nearest station in approaching Palmyra, the defendant's conductor, Duke, in coming through the passenger coach, called attention to the fact that he had "a heavy train" that morning. He then asked the three passengers for Palmyra: "If I slow this train down, will you all try to get off?" Each of the passengers, including the plaintiff, "readily agreed to accomodate"' the conductor, and as the train neared that station, the plaintiff started down on the rear platform step of the coach. As he did so, the conductor, Duke, who was also on the platform, touched him on the shoulder and asked him, "as the oldest man," to wait and let

the other two younger men get off first, since by then the train would be running "a little slower," or "slightly slower." The plaintiff complied with this request and the two other passengers passed by him and got off at the station platform. At that time the train was still moving, although slowing up continuously.

The case of plaintiff rests solely on his testimony. In narrating what happened, he testified, in chief, as follows:

"Coming up here, I wouldn't say exactly the spot, but between Rockaway, the watering station, and Palmyra, the conductor came through—it was three of us—and he said, 'If I slow this train down will you try to get off?' We readily agreed to accomodate the man. He said, 'I have a heavy train this morning.' Well, when we approached Palmyra I walked down—started down on the step, being acquainted with the surroundings at the depot, knowing it was smooth and being an old man I preferred to get off on the smooth place. He touched me on the shoulder and says 'You are the oldest man on this train. Now let the younger men get off and the train will be a little slower.' Well I stepped back and made room for them to walk down on the step. Well, when they got off the train was too near then the underpass for me to try to get off the train. So I stayed on until it got around the bluff, trying to pick a smooth place to leave the train. It got around the curve some hundred yards, I reckon, as near as I can come to it, from the station. So it looked tolerable smooth and I stepped off, catching my whole weight on this foot, striking a rock, leaning from the train in case I lost my footing I wouldn't fall under it; leaning from the train I stepped on the rock and this pain struck me right there and ran up in this ankle. Well, I stopped and leaned back against the bank a while, it kind of deadened it, and it began to get pretty painful, made me right sick. I stood there a while and sort of got over it and walked on up here and attended to the business."

During the progress of the trial certain other facts were disclosed. In answer to the question, "You didn't see any reason why it wasn't perfectly safe to get off when you did get off?" he stated, "I didn't see any reason why, but a man never

knows, the train going the same way he was going. I noticed the rocks but I didn't know I was going to hit them."

Plaintiff admitted there was no compulsion on the part of the conductor exerted against him immediately prior to his alighting from the train; that the conductor offered no suggestions or advice; that the train was moving slowly when he alighted; that there was no sudden jerk or speeding up of the train; and that he had a perfectly clear view of the terrain and observed the rocks at the place where he alighted. He further admitted that he made no complaint to the defendant in regard to the alleged injury; that he did not consult a doctor until just before the trial of the case; that the action was not brought until the statute of limitations was on the verge of running; and that, though the injury to his foot was painful, he did not refrain from attending to his usual duties.

The chief ground of negligence relied upon is the act of the conductor in inducing plaintiff to remain on the train when he was in the act of alighting therefrom at the station.

Since the decision of this court in *Richmond, etc., R. Co.* v. *Morris*, 31 Gratt. (72 Va.) 200, the law applicable to cases of this nature has been firmly established. In delivering the opinion of the court, Judge Burks, Sr., employed this language:

"The reports are filled with cases expounding and illustrating the doctrine of contributory negligence, and there is more or less conflict in the decisions, under the diversity of circumstances in the cases. Attempt to reconcile them would be labor to no useful purpose. We shall make no such attempt. We think the law on the subject applicable to such a state of facts as we now have to deal with is correctly laid down by the Supreme Court of the United States in the recent case of *Railroad Co.* v. *Jones*, 95 U. S. (5 Otto) 439, 24 L. Ed. 506.

"Mr. Justice Swayne, in his opinion of 'the court delivered by him, said: 'One who by his negligence has brought an injury upon himself cannot recover damages for it. Such is the rule of the civil and common law. A plaintiff in such cases is entitled to no relief. But where the defendant has

been guilty of negligence also, in the same connection, the result depends on the facts. The question in such cases is: 1. Whether damage was occasioned entirely by the negligence or improper conduct of the defendant; or, 2. Whether the plaintiff himself so far contributed to the misfortune by his own negligence or want of ordinary care and caution that but for such negligence or want of ordinary care and caution on his part the misfortune would not have happened.'

"In the former case the plaintiff is entitled to recover. In the latter he is not. The authorities cited by the learned justice fully sustain the propositions laid down in the opinion."

This doctrine has been specifically approved in the following cases: *Jammison* v. *Chesapeake, etc., Ry. Co.*, 92 Va. 327, 23 S. E. 758, 52 Am. St. Rep. 813; *Chesapeake, etc., Ry. Co.* v. *Wills*, 111 Va. 32, 68 S. E. 395, 32 L. R. A. (N. S.) 280; *Chesapeake, etc., Ry. Co.* v. *Paris*, 111 Va. 41, 68 S. E. 398, 28 L. R. A. (N. S.) 773. See also *Richmond, etc., R. Co.* v. *Pickleseimer*, 85 Va. 798, 10 S. E. 44; *Richmond, etc., R. Co.* v. *Pickleseimer*, 89 Va. 389, 16 S. E. 245.

In *Chesapeake, etc., R. Co.* v. *Paris, supra,* a case much stronger in favor of the plaintiff than the case at bar, wherein the plaintiff was denied recovery, Keith, President, quotes with approval the following language of Chief Justice Black, in *Railroad Co.* v. *Aspell,* 23 Pa. St. 147:

"It has been a rule of law from time immemorial, and is not likely to be changed in all time to come, that there can be no recovery for an injury by the mutual fault of both parties. When it can be shown that it would not have happened except for the culpable negligence of the party injured concurring with that of the other party, no action can be maintained. A railroad company is not liable for an accident which the passenger might have prevented by ordinary attention to his safety; even though the agents in the train are remiss in their duty * * * . From these principles it follows very closely that if a passenger is negligently carried beyond the station where he intended to stop and where he had a right to be let off, he can recover compensation for the inconvenience, the loss of time and the labor of traveling back; because these are the direct consequences of the wrong

done to him. But if he is foolhardy enough to jump off without waiting for the train to stop, he does it at his own risk; because this is gross negligence for which he can blame nobody but himself. If there be any man who does not know that such leaps are dangerous, especially when taken in the dark, his friends should see that he does not travel on a railroad."

The court also lays down this fundamental rule of law:

■ "Where a passenger has been wrongfully carried beyond his station, or has not been given a reasonable time to leave a train, this principle requires him to submit for the time to the situation, secure in his right ultimately to recover for the inconvenience he may suffer, but forbids him to step from a moving train, thereby imperiling his life and limb, and then turn around and engraft the consequences of his own rash act upon the antecedent negligence of the railroad and recover for both."

The basic question for determination is this: Was the plaintiff, as a matter of law, guilty of contributory negligence which bars a recovery?

■ It is conceded that the applicable rule is, if the facts be doubtful, or if they be such that reasonable men may differ in regard thereto, then the determination is for the jury; but where the facts are undisputed, the question then is one of law and should be determined by the court.

■ The evidence of the plaintiff clearly demonstrates that whatever injury, if any, he may have suffered when he alighted from the train, was due primarily to his own act of negligence. There is not a scintilla of evidence that the defendant's conductor directed, requested, encouraged or advised plaintiff to alight from the train on the rocks, which plaintiff admits were obvious. Plaintiff's own testimony demonstrates that in alighting from the train at the place of injury, he did so of his own free will and accord. He was a free agent and there was no compulsion exerted by the conductor which even suggested that he should leave the train at the point he did. Under the facts stated, one would have to go far afield to arrive at the conclusion that there was any causal connection between the request of the conductor that

the plaintiff refrain from alighting at the station and the act of the plaintiff in subsequently alighting upon rocks which were plainly obvious, at a point remote from the station.

Whatever the rule of decision in other jurisdictions, this court is committed to the doctrine that a passenger on a railroad train (as distinguished from a street car), is guilty of negligence *per se* in voluntarily alighting from a moving train, except in a case where there is a well founded apprehension of peril to life or limb induced by the negligence of the carrier, or in a case where the passenger is invited to alight by an agent of the carrier, or is told that he may do so in safety, provided the train has not attained such a speed that the danger would be obvious, or that the place of alighting is obviously dangerous. This doctrine was so stated in the *Paris Case, supra,* in this language:

"The decided cases with reference to alighting from moving trains are almost without number. Many of them deal with passengers alighting from street cars, and it is almost universally held that to alight from a slowly moving street car is not negligence *per se.* Where a passenger is *invited* to alight by an officer of the train, or is told that he may do so in safety, the cases hold that circumstance to justify his action provided the train has not attained such a speed that the danger would be obvious. If he is induced to leap from the train by a well founded apprehension of peril to life or limb, induced by occurrences which might have been guarded against by the utmost care of the carrier, he is entitled to recover for any injury he may have sustained thereby, although no injury would have occurred if he had remained quiet; and we admit that there are cases which have held the carrier responsible where there was no invitation extended, no assurance given, and no peril apprehended. But we are of opinion that the just and proper rule of decision is that which we understand to prevail in this State."

In this case no invitation was extended to plaintiff to alight from the train at the time and place where he did alight. There was no assurance upon the part of the conductor that plaintiff could alight in safety. Upon the contrary, before alighting, plaintiff "noticed the rocks" which caused the al-

leged injury, but he "didn't know that he was going to hit them."

The judgment of the circuit court will be reversed and this court will proceed to enter judgment as the circuit court should have entered.

*Reversed and final judgment.*

HOLT, HUDGINS AND SPRATLEY, JJ., dissenting.

HOLT, J., dissenting.

The Railway's suggestion or request that Butler step from its moving train at Palmyra was without excuse. The reason for this extraordinary suggestion was that its train was heavy and to stop it on grade might throw some extra strain upon its engine. It was from this that trouble came. Injury is established; the verdict is not large, and the Railway might very well have been willing to make some reparation. It. has, however, elected to stand upon its rights and crave the law, as it had the right to do. The law, as I see it, is correctly laid down in *Chesapeake, etc., Ry. Co.* v. *Wills*, 111 Va. 32, 68 S. E. 395, 32 L. R. A. (N. S.) 280, where it is said:

"As we have seen, the declaration does not aver that any agent of the company directed, advised, encouraged, or even had knowledge of plaintiff's intention to alight from the train; and so that, between the negligent act of the railroad company and the injury suffered by the plaintiff, there was the intervening act of a responsible agent, that responsible agent being the plaintiff himself. While the plaintiff as a result of the defendant's negligence had taken the wrong train, but was in a place of safety and of his own accord alighted from the train, it cannot be said that the injury which he then received was the natural and continuous sequence, unbroken by any new or independent cause, of the negligence of the defendant which caused him to enter the wrong train."

Butler was asked to get off at Palmyra station. With it he was intimately familiar. The ground was smooth, level and free from obstruction. He testified without objection that he could have gotten off at that point with safety. He started to get off but the conductor stopped him, and for that reason he was prevented from alighting at this place of safety and until the underpass had been reached and passed. It was then that he stepped upon a loose bit of ballast and was hurt.

Here Butler was invited to get off a moving train at Palmyra, and to accommodate the Railway, he acceded to its suggestion.

To step from a moving train is usually negligence *per se*, but an examination of the cases relied upon to support that doctrine shows that the passenger is usually acting on his own initiative and is undertaking in some way to further his own interest or purpose. But that is not this case. Butler was a passenger on a train scheduled to stop at Palmyra. His ticket took him there. What he did was not to help himself but to help the railroad, and that he was induced and encouraged to do in its interest and not his. Moreover, the landing immediately at the station was a safe one, and he was preparing to alight at it when he was prevented by the conductor. In short, he agreed to get off at a safe place and was taken to an unsafe one. When he did get off, the conductor was standing immediately by and saw him get off at a point not intended for any such use or purpose, and this without protest on his part but with implied approval.

The request that he get off the moving train still stood. There would have been no accident but for the loose bit of ballast. The train was traveling at even a slower rate than when it passed the station. The trouble is that at the request of the conductor and to accommodate him he got off at a place where passengers were not expected to get off. If, in the undisputed circumstances which obtained here, no liability attaches, it is because at all times and in all circumstances it is negligence *per se* for a passenger to step from a moving train. That is not the law.

I have no quarrel with the general rule; it is a reasonable rule. Passengers who get off moving trains to further their

own purpose do so at their own risk. But there is exception to that rule equally reasonable, and that exception we have expressly approved.

Whenever one in authority—in this case the conductor—directs, advises, or encourages a passenger to alight, then the burden shifts. It is the Railway which assumes the risk. That the conductor did encourage Butler to get off this moving train is too plain for argument.

The jury in finding the defendant guilty must have had this situation in mind. As I see it, the verdict should stand.