[No. 451-3.    Division Three.    July 28, 1972.]

HAYES M. SANDERSON et al., *Appellants*, v. W. A. MOLINE et al., *Respondents*.

---

*William J. Powell,* for appellants.

*Robert D. Morrow* (of *Karr, Tuttle, Koch, Campbell, Mawer & Morrow*), for respondents.

MUNSON, C.J.—Plaintiffs appeal a judgment entered upon a jury verdict in favor of defendants denying recovery in a malpractice action. Plaintiffs sought recovery based upon the alleged negligent diagnosis, care and treatment by defendant dentist, which allowed plaintiff wife's dental condition to deteriorate to an advanced stage of periodontal disease. We reverse.

The primary reason for our reversal is the trial court's improper adoption of the locality rule for the establishment of the standard of care.[1] The Supreme Court, in the far-reaching decision of *Pederson v. Dumouchel,* 72 Wn.2d 73, 79, 431 P.2d 973 (1967), abandoned the locality rule as it then existed in this jurisdiction,[2] stating:

> The "locality rule" has no present-day vitality *except that it may be considered as one of the elements to*

[1] The trial court gave the following instruction:

"In performing professional services for a patient, a dentist has the duty to have that degree of learning and skill ordinarily possessed by dentists of good standing, *practicing in the same or a similar locality* and under similar circumstances.

"It is his further duty to use the care and skill ordinarily exercised in like cases by reputable members of his profession *practicing in the same or a similar locality* under similar circumstances, and to use reasonable diligence and his best judgment in the exercise of his skill and the application of his learning, in an effort to accomplish the purpose for which he is employed.

"A failure to perform any such duty is negligence that is called malpractice.

"The degree of care, skill and learning which constitute the recognized standard of practice, and any claimed deviation therefrom (which involves matters not generally understood by those not trained in this profession) must be proved by testimony of members of that profession." (Italics ours.)

[2] *Cf.* 6 Wash. Prac. 42-45, WPI 105.01-.02 (Supp. 1972) for examples of nonlocality grounded instructions on the standard of care; however, we do not pass upon the propriety of the notes appended thereto.

determine the degree of care and skill which is to be expected of the average practitioner of the class to which he belongs.

(Italics ours.) In its stead the court posited:

A qualified medical or dental practitioner should be subject to liability, in an action for negligence, if he fails to exercise that degree of care and skill which is expected of the average practitioner in the class to which he belongs, acting in the same or similar circumstances. *This standard of care is that established in an area coextensive with the medical and professional means available in those centers that are readily accessible for appropriate treatment of the patient.*

(Italics ours.) In the instant case, defense counsel convinced the trial court that the last sentence of the above-quoted passage meant that Spokane, being a medical center to which plaintiff had ready access, established the *only* standard of care relevant to the instant case.

The question of geographical limits for the standard of care in a malpractice action is ancillary to a determination of the proper standard of care by which to judge defendant's actions. *Viita v. Fleming,* 132 Minn. 128, 155 N.W. 1077 (1916); *Brune v. Belinkoff,* 354 Mass. 102, 235 N.E.2d 793 (1968); *Cavallaro v. Sharp,* 84 R.I. 67, 121 A.2d 669 (1956). Therefore, the proper question for our determination becomes: If there is a medical center readily accessible to a patient, is the applicable standard of care confined to that practiced within that medical center? We hold in the negative.

■ There can be no question that once a malpractice action involves medical standards in a small community, as compared to a medical center, the *Pederson* rule is applicable. We see no reason why the compelling rationale of *Pederson* is not analogously applicable to the present case. If the quality of medical care for periodontal disease progressed in all other areas of the state, except the area of the "Spokane medical center", Spokane dentists should not be held to an inferior standard of care.

The court correctly allowed a Bellevue periodontist to

testify both as an expert and as a general practitioner[3] as to the standard of care in the state of Washington, with more particularity on the Bellevue medical area. Similarly, the trial court allowed the defendant to introduce evidence as to the applicable standard of care in the Spokane area. The discrepancy between the two and a resolution of the propriety of one as opposed to the other became a question of fact for the jury. 2 Harper & James, Law of Torts § 16.6 at 917 and § 17.1 at 969 (1956).

The evidence here does not indicate medical differences of professional opinion as to diagnosis and treatment. Consequently, *Hayes v. Hulswit,* 73 Wn.2d 796, 440 P.2d 849 (1968) and *Versteeg v. Mowery,* 72 Wn.2d 754, 435 P.2d 540 (1967), cited by the defendant, are not apposite.

The standard of care question is essentially one of "good medical practice," *i.e.,* what is customary and usual in the profession *at large.* Prosser on Torts § 32 at 167 (3d ed. 1964). This is the conclusion of the *Pederson* rule.[4] Thus, the locality instruction as given was error. It was prejudicial to plaintiff by diminishing the value of the expert brought from another area.

Inasmuch as the following questions may arise upon retrial, we shall comment briefly upon them.

We agree with plaintiff's objection to the trial court's removal from jury consideration of evidence of defendant's failure to chart home care instructions and the progressive deterioration of plaintiff's condition. Although the court's reason for the removal related to the question of proximate cause of the plaintiff's condition, which in isolation was arguably correct, the ruling disregarded the fact that the testimony could be significant in the jury's consideration of

---

[3]The record shows that plaintiff's expert, before limiting his practice to the care and treatment of periodontal disease, was a general practitioner in the Spokane area.

[4]*Cf. ZeBarth v. Swedish Hosp. Medical Center,* 81 Wn.2d 12, 499 P.2d 1 (1972). *See* 44 Wash. L. Rev. 505, 509 (1969) and 3 Gonzaga L. Rev. 236 (1968).

defendant's negligence in the care, diagnosis and treatment of plaintiff's disease.[5]

■ The trial court summarily instructed the jury on the effect of plaintiff's abandonment of treatment and defendant's liability, which in our opinion was confusing to the jury. Plaintiff's termination of treatment with the defendant and possible concomitant deterioration of her condition until the resumption of treatment with a periodontist was merely a factor to be taken into consideration by the jury in establishing damages once they determined defendant was liable and not one that relieved the defendant of liability for damage up to the time of the discontinuance of treatment. *Williams v. Wurdemann,* 71 Wash. 390, 392, 128 P. 639 (1912). Thus, any instruction which the court will give with regard hereto should specifically draw this distinction to the attention of the jury.

■ As to the admission of testimony of defendant's nurse concerning a telephone conversation with an unidentified male at plaintiff's home, the contents of a conversation as related by one party with an unidentified party is generally violative of the hearsay rule. *State v. Benson,* 144 Wash. 170, 257 P. 236 (1927); *State v. Manos,* 149 Wash. 60, 62, 270 P. 132 (1928). Under the evidence in this case, however, the trial court was correct in admitting the testimony because the circumstances surrounding the conversation presented a rational basis for the jury to infer that the person on the other end of the line was plaintiff's husband. *Evidence of Telephone Conversations,* Annot., 105 A.L.R. 326 (1936). The manner of introducing this evidence should be via the defendant's nurse, not the defendant relating his conversation with the nurse.

■ As for the impeachment of defendant via the use of a textbook, CR 43 (b) provides in part:

A party may call an adverse party . . . and interrogate him by leading questions and contradict and im-

---

[5]The defendant was unable to state with any degree of specificity what home care instructions had been given to the plaintiff or that defendant knew how and when the disease progressed to the state which served as the basis for this action.

peach him in all respects as if he had been called by the adverse party.

Cf. CR 43(f). Defendant, being a prominent Spokane dentist, qualified as an expert on the particular aspect of dental care at issue in this case. Thus, plaintiff having called defendant as an expert witness, could cross-examine him, using an authoritative text. As in this case, however, when it is not conceded by the witness that the text is authoritative, the cross-examiner has the burden of proving same. Therefore, we sustain the trial court's holding; plaintiff did not sustain her burden. *Dabroe v. Rhodes Co.*, 64 Wn.2d 431, 438, 392 P.2d 317 (1964).

We find no error in the trial court's failure to give plaintiff's proposed instruction relative to informed consent. *Mason v. Ellsworth*, 3 Wn. App. 298, 474 P.2d 909 (1970). The issue was not raised by the evidence. *Cf. ZeBarth v. Swedish Hosp. Medical Center*, 81 Wn.2d 12, 499 P.2d 1 (1972).

We find no error in the trial court's refusal to exclude all dentists from the courtroom since the granting of such motion lies entirely within the court's discretion and no abuse of same was present.

It was improper for the trial court to tax costs against plaintiff for transcription of pretrial discovery depositions. The depositions were not used as evidence but solely for impeachment. *Gabel v. Koba*, 1 Wn. App. 684, 693-94, 463 P.2d 237 (1969).

Judgment is reversed and the case is remanded for trial.

GREEN and PEARSON, JJ., concur.

Petition for rehearing denied September 7, 1972.