### Richmond

CHRYSTAL M. LAWRENCE

V.

JOHN C. WIRTH, JR.

December 2, 1983.

Record No. 810149.

Present: All the Justices.

*John C. Shea (C. Hardaway Marks; W. Park Lemmond, Jr.; Marks, Stokes & Harrison,* on brief), for appellant.

*R. Carter Scott (John M. Claytor; Browder, Russell, Morris & Butcher,* on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

In this medical malpractice action, the sole question on appeal is whether the trial court erred in granting a jury instruction on contributory negligence. The plaintiff, Chrystal M. Lawrence, alleged she sustained injuries and other damages as a result of the defendant's negligent diagnosis and treatment of a malignant tumor in her left breast. The defendant, John C. Wirth, Jr., a general surgeon, denied he was negligent and asserted that Lawrence,

herself, was guilty of negligence which contributed to her injuries and other damages. The trial court submitted the issues of negligence, contributory negligence, and proximate cause to the jury, and the jury returned a verdict for the defendant, which was approved by the court.

In mid-June, 1977, Lawrence discovered a growth or lump, "about the size of a dime," in the lower, inner quadrant of her left breast. The following month, she saw a Dr. Lassiter who unsuccessfully endeavored to aspirate the lump. Dr. Lassiter referred the plaintiff to the defendant, who examined Lawrence on August 2, 1977.

Dr. Wirth testified he did not find a lump in the lower, inner quadrant of plaintiff's breast. Instead, he was concerned about a hard, knotted area, which he believed was cancerous, located in the upper, outer quadrant of the plaintiff's left breast. On August 10, 1977, Wirth performed a biopsy, not of the lump in question, but of most of the upper, outer quadrant. This surgery was so extensive that it was described as a partial mastectomy. The tissue removed from the upper, outer quadrant was benign.

The plaintiff, however, had expected Wirth to perform a biopsy of the lump which she and Dr. Lassiter had found. Immediately following this surgery, Lawrence noted the lump in question was still present. When she asked the defendant for an explanation, he made no reply.

Lawrence returned to Wirth on August 17 for removal of the sutures, and she again questioned him about the lump remaining in the lower, inner quadrant. Once again, Wirth made no explanation. (At trial, however, he testified that because his examination revealed no noticeable lump, he concluded that the plaintiff and Dr. Lassiter were mistaken.) When Wirth released the plaintiff on August 17, he did not refer her to another physician, and made no follow-up appointments. However, he did advise her to seek further medical attention if she detected subsequent changes or problems with her breast.

Approximately two months later, in mid-October, Lawrence observed that the lump was larger. Concerned about this change, she saw Dr. John Easterling, a general surgeon, in mid-December. By this time, the lump was the size of a "quarter or a fifty-cent piece." Dr. Easterling determined that the lump was a malignant ductal cancer, and he immediately performed a radical mastectomy of the plaintiff's left breast. Lawrence testified she delayed

seeing a doctor from mid-October to mid-December because she was frightened by the prospect of cancer and she trusted Dr. Wirth's judgment.

Approximately one year later, tests revealed that Lawrence suffered from terminal metastatic bone cancer.* Dr. Galen Wampler, her treating oncologist at the Medical College of Virginia, testified that the metastasis occurred between August and December, 1977, that the defendant's failure promptly to diagnose and to remove the cancerous tumor caused the fatal metastatic bone cancer to develop, and that, had the tumor been removed in August, 1977, the plaintiff would have been cured.

On December 19, 1979, this matter was presented to a Medical Malpractice Review Panel, Code § 8.01-581.1, *et seq.* The Panel's report, filed as evidence at trial, opined:

> that the evidence supports a conclusion that the health care provider [Wirth] failed to comply with the appropriate standard of care and that such failure is a proximate cause in the alleged damages; but the evidence does not show that the defendant's failure to comply with the appropriate standard of care was the proximate cause of Mrs. Lawrence's medical problems subsequent to December 30, 1977.

However, no evidence of the plaintiff's metastatic bone disease was presented to the Panel because the diagnosis was not made until a few days after the Panel hearing.

Over the plaintiff's objection, the trial court instructed the jury that, if the plaintiff was guilty of negligence which proximately caused her injuries, it must return a verdict for the defendant. The defendant relies upon the fact that Lawrence delayed seeking further medical attention for two months after she discovered, in mid-October, that the lump had grown. He reasons that, since the cancer metastasized sometime between August and December, 1977, the jury reasonably could infer that her delay was a contributing cause, thereby barring her from any recovery. We do not agree.

■ The physician-patient relationship differs substantially from that of the ordinary plaintiff and defendant. Due to the great disparity in medical knowledge between doctor and patient, the

---

* It has been represented to the Court that the plaintiff died of metastatic bone cancer while this appeal was pending. Her appeal, however, does not abate. Code § 8.01-20.

patient is entitled to rely upon assurances made by the doctor and, generally, need not seek the opinions and services of others. *See Fairchild* v. *Brian,* 354 So.2d 675, 680 (La. Ct. App. 1977).

The defendant's alleged negligence occurred between August 2 and 17. Clearly, the plaintiff was in no way negligent during that time period. How then, could the plaintiff's conduct some two to four months later contribute to her injuries resulting from the defendant's failure to discover, diagnose, and treat the malignant tumor? Notwithstanding the obvious answer, the contributory negligence instruction permitted the jury to conclude that the plaintiff's subsequent conduct barred all recovery.

It is a well-established principle of tort law that, to bar recovery, a plaintiff's negligence must *concur* with the defendant's. *C. & O. Ry. Co.* v. *Butler,* 179 Va. 609, 614, 20 S.E.2d 516, 518 (1942). Although the present case is one of first impression in Virginia, most cases from other jurisdictions apply this principle with equal force in medical malpractice suits. *See, e.g., Bird* v. *Pritchard,* 33 Ohio App.2d 31, 32, 291 N.E.2d 769, 771 (1973); *Leadingham* v. *Hillman,* 224 Ky. Op. 177, 180, 5 S.W.2d 1044, 1045 (1928); *Schultz* v. *Tasche,* 166 Wis. 561, 564, 165 N.W. 292, 293 (1917); *Wesley* v. *Allen,* 235 Ill. App. 322, 324 (1925).

Both at trial and on appeal, Lawrence contended her conduct could be considered only in mitigation of damages, and we agree.

> One who is injured by the wrongful or negligent acts of another, whether as the result of a tort or of a breach of contract, is bound to exercise reasonable care and diligence to avoid loss or to minimize or lessen the resulting damage, and to the extent that his damages are the result of his active and unreasonable enhancement thereof or are due to his failure to exercise such care and diligence, he cannot recover.

*Haywood* v. *Massie,* 188 Va. 176, 182, 49 S.E.2d 281, 284 (1948) (quoting 15 Am. Jur. Damages § 27 (1938)). Therefore, a patient's neglect of his health following his physician's negligent treatment may be a reason for reducing damages, but does not bar all recovery.

In *Sanderson* v. *Moline,* 7 Wash. App. 439, 499 P.2d 1281 (1972), a dentist was negligent in treating his patient. The patient terminated treatment and delayed securing the services of another

dentist. A contributory negligence instruction was disallowed, but the jury was permitted to consider the plaintiff's delay as a factor in determining damages. *Id.* at 443, 499 P.2d at 1284. Similarly, an Oregon court held that a patient's failure to follow a physician's directions subsequent to the physician's negligent treatment "could only serve to mitigate the damages . . . . but not to relieve against the primary liability." *Beadle v. Paine,* 46 Or. 424, 431, 80 P. 903, 906 (1905).

In *Blair v. Eblen,* 461 S.W.2d 370 (Ky. 1970), a plaintiff failed to perform exercises prescribed by his physician following the physician's negligent care. Nevertheless, the plaintiff was entitled to recover for the injuries he sustained as a result of the doctor's negligence, but not for those injuries aggravated or increased by the plaintiff's own conduct. Accordingly, the jury was allowed to mitigate the damage award. 461 S.W.2d at 372. *See also Martineau v. Nelson,* 311 Minn. 92, 247 N.W.2d 409 (1976); *Los Alamos Medical Center v. Coe,* 58 N.M. 686, 275 P.2d 175 (1954); *Flynn v. Stearns,* 52 N.J. Super. 115, 145 A.2d 33 (1958); Annot., 50 A.L.R.2d 1043, 1055 (1956); 1 Louisell and Williams, *Medical Malpractice* ¶ 9.03 (1983).

The distinction between contributory negligence and mitigation of damages in a medical malpractice context was explained in *Jenkins v. Charleston Gen. Hospital & Training School,* 90 W.Va. 230, 110 S.E. 560 (1922). Jenkins was discharged from a hospital following a negligent, incorrect diagnosis of his injury. He later saw a physician who instructed him to seek further medical care. He failed to follow the instruction and a permanent injury resulted. The court held that "to be contributory, negligence must be contemporaneous with the main fact charged as negligence, and that the patient's negligence after dismissal of the physician or his abandonment of the case, does not bar recovery for the negligence of the [physician], committed before termination of the relation." *Id.* at 239, 110 S.E. at 563.

■ Thus, we hold that, under the facts in the present case, a contributory negligence defense is unavailable. On the other hand, whether the plaintiff acted reasonably to minimize her damages is a question for the jury.

Accordingly, the judgment of the trial court will be reversed and the case remanded for a new trial consistent with the views expressed herein.

*Reversed and remanded.*

POFF, J., concurring and dissenting in part.

I concur in part and dissent in part. I agree that "to bar recovery, a plaintiff's negligence must *concur* with the defendant's" and that the granting of the contributory negligence instruction was reversible error. The majority further holds, however, that upon a new trial the alleged negligence of the plaintiff may be a *partial* bar to her recovery, and with that holding I disagree.

Under the rule the majority applies, a plaintiff who has suffered an injury as the proximate result of a tort cannot recover damages for any portion of the harm which, by the exercise of ordinary care, he could have avoided. This rule is sometimes called the doctrine of "avoidable consequences." *See* Prosser, Law of Torts 422-23 (4th ed. 1971); Restatement (Second) Torts § 918.

While I recognize the logic underlying this doctrine, I am of opinion the doctrine should not be applied in this case. As the majority notes, Mrs. Lawrence testified that her delay in seeking a second medical opinion was induced by her fear of the prospect of cancer and her trust in the defendant's professional judgment. The majority holds that whether her delay was a breach of the standard of ordinary care is a question to be determined by a jury on remand. I would hold as a matter of law that Mrs. Lawrence acted as any reasonably prudent person would have acted under similar circumstances and that, given the same evidence on retrial, the trial court should not submit the mitigation question to the jury.

CARRICO, C.J., and THOMAS, J., join in opinion, concurring and dissenting in part.