Bird et al., Appellants, *v.* Pritchard, Apppellee.

[Cite as Bird v. Pritchard (1973), 33 Ohio App. 2d 31.]

(No. 288—Decided January 24, 1973.)

*Messrs. Wolske & Blue,* for appellants.
*Messrs. Knepper, White, Richards & Miller* and *Messrs. Johnston, Stilwell & Oberlin,* for appellee.

Gray, J. This is a negligence case wherein plaintiff seeks damages from defendant for injuries suffered as the result of medical malpractice.

Plaintiff filed her appeal from a judgment of the Court of Common Pleas of Hocking County upon a verdict for the defendant.

On July 3, 1970, plaintiff entered a Kroger store located in Logan, Ohio, where she selected a glass jar of mayonnaise. With the jar in her hand she turned, slipped and fell. The jar broke cutting the palmar surface of her right hand and injuring the ulnar nerve of her right hand.

Plaintiff was taken to the Hocking Valley Memorial Hospital in Logan. She requested the services of Dr. Najm, a board certified medical general surgeon. He was not available. Defendant, an osteopathic surgeon, was available. He treated the wound. Plaintiff testified that she told defendant that the fourth and fifth fingers on her right hand were numb. Defendant did not deny this statement. He cleansed the wound and told plaintiff to see him on July 6, 1970, the following Monday. Instead, plaintiff saw Dr. Najm on Monday. As defenses, defendant claims that plaintiff was guilty of contributory negligence and that she assumed the risk of her failure to follow directions of defendant. Plaintiff filed her notice of appeal and assigned the following error:

"The trial court errored [sic] in his charge to the jury on the issues of contributory negligence and assumption of risk."

We believe that the error is well taken. Under defendant's theory of the case, plaintiff could not have been guilty of contributory negligence until Monday, July 6, 1970, when she failed to appear for further treatment by defendant. At that time it was impossible to perform primary or secondary repair of the injured nerve.

The prejudicial error in the court's charge appears when we examine the facts. Negligence to be contributory and to constitute a defense must be concurrent, direct and proximate. The Supreme Court in *Bahm* v. *Pittsburg & Lake Erie Rd. Co.*, 6 Ohio St. 2d 192, 194, 195, said:

"* * * Contributory negligence is not a defense in an ordinary tort action unless that negligence is a direct and proximate cause of the injury received. * * * [F]or contributory negligence to defeat the claim of the plaintiff, there must be not only negligent conduct by the plaintiff but also a direct and proximate causal relationship between the negligent act and the injury plaintiff received. * * *"

There is a relative paucity of cases wherein the defense of contributory negligence has been interposed. Our research has turned up the case of *Josselyn* v. *Dearborn*, 62 A. 2d 174, decided by the Supreme Judicial Court of

Maine in 1948. The thirteenth, fourteenth and fifteenth paragraphs of the syllabus as epitomized in 62 A. 2d 174 are as follows:

13. "If patient was negligent and his negligence merely superimposed itself on that of osteopath, patient could not recover for damages resulting from his own negligence, but could recover for damages resulting from osteopath's negligence."

14. "A patient may, while he is under treatment, by his own carelessness injure himself, yet he may recover if osteopath carelessly or unskillfully treats him afterwards, and thus does him a distinct injury, since in such case patient's fault does not directly contribute to the injury sued for."

15. "In malpractice action against osteopath, osteopath's requested instruction that failure of patient to follow all reasonable and proper instructions given by osteopath, which failure contributes to injury claimed to have arisen because of negligence of osteopath, will bar recovery, was properly refused because too broad."

The position of plaintiff may be stated in the words of the court in *Flynn* v. *Stearns*, 52 N. J. Super. 115, 120, 122, 145 A. 2d 33, 37:

"Appellant contends that this charge was erroneous because 'Negligence of the patient, to constitute a bar to the suit, must have been an active and efficient contributing cause of the injury; it must have been simultaneous and cooperating with the fault of the defendant, must have entered into the creation of the cause of action, and have been an element in the transaction which constituted it. Where the fault of the patient was subsequent to the fault of the physician and merely aggravated the injury inflicted by the physician, it only affects the amount of the damages recoverable by the patient.' This is a correct general statement of the law. 41 Am. Jur., Physicians & Surgeons, Sec. 80, p. 199; Annotations: 50 A. L. R. 2d 1043 and 17 L. R. A., N. S., 1242. Appellant says that since here the fault, if any, of the plaintiff was subsequent to the fault of the defendant it was not a proximate contributing cause of the

injury, and it should have been submitted to the jury, if at all, only as bearing on the issue of damages, and not as a basis for a finding of contributory negligence.

"* * * Therefore, the general rules relating to contributory negligence must be sharpened considerably when applied to medical malpractice cases and care must be taken to tailor the charge to the jury in such cases to fit the facts of the particular case. Cf. *Kreis* v. *Owens,* 38 N. J. Super. 148, 155, 118 A. 2d 420 (App. Div. 1955); *Brumberger* v. *Burke,* 56 F. 2d 54, 56 (3 Cir., 1932)."

In 52 N. J. Super. at 123, 124, 145 A. 2d at 38, 39, the court further said:

"* * * If the defendant was negligent in the respects charged by plaintiff, plaintiff's failure to exercise 'was subsequent to the fault of the physician and merely aggravated the injury inflicted by the physician' and therefore it affected only 'the amount of the damages recoverable by the patient.' 41 Am. Jur., Physicians & Surgeons, Sec. 80, p. 199."

"Of course, there are cases in which it must be left to the jury to determine whether the plaintiff's actions did constitute contributory negligence and thus an absolute defense, or whether they went only to the question of damages, but in such cases it is the obligation of the court to instruct the jury clearly in the rules of law by which the evidence is to be examined and upon which the jury is to determine whether it is one or the other. In such a case the jury is especially in need of clear and firm guidance, *Kreis* v. *Owens, supra,* Cf. *Grammas* v. *Colasurdo,* 48 N. J. Super. 543, 552, 138 A. 2d 553 (App. Div. 1958); *Gabriel* v. *Auf Der Heide-Aragona, Inc.,* 14 N. J. Super. 558, 565, 82 A. 2d 644 (App. Div. 1951)."

A good summation of our question is contained in the following. Holding that the defendant physicians were liable for malpractice, notwithstanding that the plaintiff did not return for further treatment as directed by the defendants, but went to another physician who treated the patient with resultant recovery, the court in *Williams* v. *Wurdemann,* 71 Wash. 390, 392, 128 P. 639, 640 (in which

the defendants argued that the plaintiff had been negligent in not returning for further treatment) said:

"It is true undoubtedly that if a patient employs a physician to treat him for a malady, and receives careful and skillful treatment at his office, but fails to return to the office for further treatment before he is discharged by the physician, and in consequence suffers an injury, he is not entitled to recover against the physician for such injury; and it is also true that a physician's liability ceases the moment his patient dismisses or discharges him, if his treatment of the case has been proper up to that time. But these principles have no application where the physician's treatment of the case has been improper. When being improperly treated the patient is at liberty to quit at any time, and he may hold the physician liable for the injuries suffered by him because of the improper treatment, notwithstanding it is highly probable that the physician, had the patient continued his treatment, would sooner or later have discovered that his treatment was improper and would so have modified it as to effect a cure."

We now wish to advert to the testimony adduced at the trial of this cause. At one point, defendant on cross-examination testified as follows:

"Q. *During the time you practiced medicine, had you ever repaired an ulnar nerve?*

"A. *No, Sir.*" (Emphasis added.)

At another point, defendant testified as follows:

"Q. Do you recall her telling you that she had numbness in her small finger and the ring finger?

"A. She may have well said this, yes.

"Q. And would that be significant to you, your treatment of her?

"A. Not particularly in view of the injury, No.

"Q. What do you think her injury was on that as you examined her at that time?

"A. My assessment then was that she had a laceration, one on the thumb, one on the hypothenar eminence, which she sustained from the fall and the glass as previously mentioned, a wound which probably contained glass and

did contain mayonnaise or salad dressing.

"Q. That, is it not, was the extent of your examination and your conclusions at that time, is that correct?

"A. The examination of the wound.

"Q. Examination of the wound, examination of the patient's hand and the laceration, the whole area which was—you have just stated was your conclusion or your diagnosis in the case, is that correct?

"A. Yes.

"Q. As I understand then, that part of your diagnosis or that your diagnosis did not include injury to the ulnar nerve?

"A. She may have well had an injury to the ulnar nerve which I felt impossible to determine at that time without further surgical exploration which I felt was contra indicated at that time."

These inconsistent statements should be examined in the light of *Winkler* v. *Columbus*, 149 Ohio St. 39. Defendant further testified as follows:

"Q. It is also true, isn't it, Dr. Pritchard, that you did not put in the Emergency Room record, which is Exhibit No. 1, any mention or any notes that there was injury to the ulnar nerve, is that correct?

"A. That's correct. * * *

"Q. Now, Dr. Pritchard, the fact is, is it not, that were a primary or secondary repair of the ulnar nerve in Eleanor Bird—were to be done, that you yourself would not do such a procedure, is that correct?

"A. That's correct. * * *

"Q. Now, Doctor, as I understand it, forgetting about the Emergency Room, at a later date for secondary repair, that you are telling us that you would not be the person that would be qualified to do the secondary repair, is that correct?

"A. No, I would say that I would have proposed to send this or any other patient to Columbus for this repair. * * *

"Q. Now, tell us why you would not be the person to do the ulnar nerve repair?

"A. Yes, because I feel that there are people that do

absolutely nothing but this type of surgery and it's my opinion that they are better qualified to do it than some one who does an occasional ulnar nerve repair.

"Q. The fact is you haven't done any ulnar nerve repair since you have been out of residency?

"A. That is incorrect.

"Q. *The fact is you have done some ulnar nerve repair since you have been out in practice?*

"A. *First you asked me if I did any nerve repair.*

"Q. *Ulnar nerve.*

"A. *I have done both. I have done nerve repair and I have done ulnar nerve repair.*" (Emphasis added.)

"Q. Why didn't you think you were qualified to do this nerve repair?

"A. I felt that there are those in this area that were better qualified to perform this as an elective procedure, people who do nothing but this type of work. They do no other type of surgery.

"Q. Is that also true, Doctor, that those people are better qualified to make a diagnosis of an ulnar nerve injury?

"A. I would assume that would be correct since they deal with nothing but, yes, sir.

"Q. Dr. Pritchard, at the time on July 3, 1970, at the time of this instance in the Emergency Room and speaking in terms of ulnar nerve repair, isn't it true that you did not have the privilege in this hospital to do such an ulnar nerve repair?

"A. That may have been true at that time, I don't know. I came here initially with restricted privileges which were periodically advanced and the dates of those advancements escapes me at this time."

The question was injected into the trial of this cause that it would have been just as well to wait until a later date to do secondary repair as to do primary repair immediately.

Dr. Najm testified as follows:

"Q. And you stated in your finding—and what was your diagnosis then, doctor?

"A. My diagnosis is recent larceration of the right

hypothenar area of the right hand with injury to the both motor and sensory branches of the right ulnar nerve. * * *"

Dr. Najm treated her on July 6, 10, and 24 and August 7 and 15, 1970. On August 15th he performed an operation for repair of the right ulnar nerve. He describes it in this manner:

"* * * A. Yes, sir. And we excised the old scar and make it larger to have better exposure of the wound, went down to the anatomical ulnar nerve, the right ulnar nerve, and found neuroma at that site which indicates injury with scar healing of the nerve. This was cut off, excised, and the nerve was sutured together, the ends of the nerve was approximated or sutured back together.

"Q. What did the neuroma indicate to you, Doctor?

"A. Neuroma indicates injury to the nerve. * * *"

Dr. Najm stated that in his opinion a primary repair within 6 or 8 hours of injury to the ulnar nerve would give better results than a later repair. Dr. Najm further testified that no general surgeon would reopen a recent wound because of the swelling, edema and reaction of the body to the wound; hence, he waited until August 15.

Neither contributory negligence, nor assumption of the risk is in this case. What we have said concerning contributory negligence applies to assumption of the risk. In summary, the only question that is in this case is whether plaintiff's action in not returning to defendant on July 6th for further treatment diminished damages for injuries she suffered, if any, from defendant's surgical procedures. Prejudicial error occurred to plaintiff's case in that the jury was charged on a theory not developed by the facts of the case and the jury was not charged on the law which should have been applied to the facts as actually developed. The cause is, therefore, remanded to the trial court for further proceedings according to law.

*Judgment reversed.*

ABELE, P. J., and STEPHENSON, J., concur.