*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0429P (6th Cir.)
File Name: 02a0429p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

Nos. 01-3137/3194

BP EXPLORATION & OIL
COMPANY,
          *Plaintiff-Appellee/*
          *Cross-Appellant,*


          *v.*


MAINTENANCE SERVICES,
INC.,
          *Defendant-Appellant/*
          *Cross-Appellee,*

DJA INSPECTION SERVICES,
INC.,
          *Defendant.*


Nos. 01-3137/
3194/4291


No. 01-4291
BP EXPLORATION & OIL
COMPANY,
          *Plaintiff-Appellant,*


          *v.*

1

MAINTENANCE SERVICES,
INC.,

      *Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 99-02638—James S. Gwin, District Judge.

Argued:  October 16, 2002

Decided and Filed:  December 18, 2002

Before:  MARTIN, Chief Circuit Judge; RYAN, Circuit
Judge; and COHN, District Judge.[*]

_____

**COUNSEL**

**ARGUED:**  Michael K. Yarbrough, FROST, BROWN &
TODD, Columbus, Ohio, for Appellant.  Joseph T. Dattilo,
BROUSE McDOWELL, Cleveland, Ohio, for Appellee.
**ON BRIEF:**  Michael K. Yarbrough, Scott D. Phillips,
FROST, BROWN & TODD, Columbus, Ohio, Thomas D.
Amrine, FROST, BROWN & TODD, Cincinnati, Ohio, for
Appellant.    Joseph T. Dattilo, BROUSE McDOWELL,
Cleveland, Ohio, John C. Fickes, Clair E. Dickinson,
BROUSE McDOWELL, Akron, Ohio, for Appellee.

_____

[*] The Honorable Avern Cohn, United States District Judge for the
Eastern District of Michigan, sitting by designation.

**III.  CONCLUSION**

For the foregoing reasons, we **AFFIRM** the district court's
judgment in both cases.

entitled to post-judgment interest for the period between when she notified the defendant that she had misplaced the first check paying the judgment and when the defendant eventually issued a replacement check. *Caffey v. UNUM Life Ins. Co.*, 302 F.3d 576 (6th Cir. 2002). We held that the defendant did not owe any interest for the period subsequent to the first attempt at payment. *Id.* at 591. Similarly, in *United States v. Bank of Celina*, 823 F.2d 911 (6th Cir. 1986), we held that the government's right to receive interest ended once the defendant made payment into the district court, since the government "had full control over when it accessed [the] funds." *Id.* at 915. Along the same lines, the Fifth Circuit has interpreted § 1961 to mean that "[i]n order to stop the accrual of interest [the defendant] had to make the money available to [the plaintiff] without attempting to impose conditions on its acceptance." *United States ex rel. Garrett v. Midwest Constr. Co.*, 619 F.2d 349, 354 (5th Cir. 1980). Outside the context of § 1961, "it is a general rule that interest will not accrue after a valid tender." *Bogosian v. Woloohojian*, 158 F.3d 1, 9 (1st Cir. 1998). Finally, as we explained in *Caffey*, the primary purpose of post-judgment interest is to compensate plaintiffs for the lost use of payments due and to discourage unnecessary delay in making payment. 302 F.3d at 590. As the district court below reasoned, once a defendant unconditionally tenders payment, the rationale for imposing post-judgment interest no longer applies.

In this case, MSI provided BP with a check for the full amount it owed, including costs and interest through August 7, 2001. BP does not dispute the amount of the check, and MSI placed no conditions or restrictions on BP's acceptance of the payment. MSI did everything within its power to pay the judgment BP had won. Therefore, the district court ruled correctly that post-judgment interest ceased to accrue on August 7, 2001, the date MSI first tendered payment to BP.

—————————

## OPINION

—————————

RYAN, Circuit Judge. We have combined for decision, in a single opinion, two appeals that come to us from the district court involving the same parties.

In the first appeal, the district court entered judgment for the plaintiff, BP Exploration & Oil Company, in the amount of $603,695.54 on a jury verdict finding the defendant, Maintenance Services, Inc. (MSI), sixty percent liable and the plaintiff forty percent liable for causing a leak in a fuel storage tank owned by BP. MSI appeals from an order denying its motion to reduce BP's damages award by $50,000 that BP received in settling its claims against another defendant, St. Paul Fire and Marine Insurance Company. In its cross-appeal, BP challenges the district court's refusal to grant judgment as a matter of law on the issue of BP's alleged contributory negligence.

In the second appeal, BP appeals the district court's decision regarding the amount of post-judgment interest MSI must pay. For the following reasons, we **AFFIRM** the district court's judgment in both cases.

### I. BACKGROUND

In August 1997, BP contracted with MSI for "repairs, upgrades and seal installation" on a fuel storage tank (Tank 20) owned by BP and located in Canton, Ohio. As part of the contract, MSI named BP as an additional insured under MSI's Commercial General Liability Insurance policy with St. Paul Fire and Marine Insurance Company (St. Paul). In September 1997, MSI began the repair work, which consisted of filling holes in the tank's floor, welding patches over corroded areas, and using cutting torches to replace seals in the tank's "floating roof." During these repairs, MSI burned a small hole in the floor of the tank.

Initially, the hole went undetected. MSI completed the repairs, and BP, without testing the newly repaired tank floor for defects, refilled it with fuel. According to its manual, BP could have performed an "8-foot water test," in which water is added to an empty tank in order to discover any leakage. Unfortunately, BP did not test the tank, and in early November 1997, BP began to notice inconsistencies between its fuel receipts and its sales and inventory. Following a heavy December rain, BP personnel found a "stain" on the ground near Tank 20, and after pumping the fuel out of the tank, BP discovered the hole. By this time, approximately 45,000 gallons of fuel had escaped into the soil, necessitating a significant cleanup operation and prompting action by at least one adjoining property owner.

About two years later, BP filed suit in the U.S. District Court for the Northern District of Ohio for damages exceeding $3 million. BP's initial complaint named MSI and St. Paul as defendants, but BP later added two other defendants, DJA Inspection Services, Inc. (DJA), a company that inspected Tank 20 prior to MSI's repairs, and American Safety Risk Retention Group, Inc. (ASRR), DJA's insurer. BP proceeded against these four parties under two alternative theories of liability.

BP's first, ultimately winning theory posited that MSI had burned the hole in Tank 20 while conducting its repairs. On this theory, BP sued MSI for negligence and breach of contract relating to the repair work. BP also sued St. Paul for breaching the insurance contract by failing to defend and indemnify BP in suits arising from MSI's misconduct. BP also sued both MSI and St. Paul on claims relating to the scope of coverage provided by the insurance policy. BP's second, ultimately losing theory was that DJA had failed to discover the hole during the inspection preceding MSI's repairs. Pursuant to this theory, BP sued DJA for negligence and breach of contract relating to the inspection and sued ASRR for breach of the insurance policy covering DJA's work.

BP is fearful that our decision on this issue will "dramatically change the law" and "inadvertently permit post-injury failure to mitigate to bar recovery in future cases." According to BP, in modified comparative negligence jurisdictions like Ohio, if juries are allowed to consider evidence of failure to mitigate as evidence of contributory negligence, then plaintiffs who bear no responsibility for causing their injuries will be found, unjustly, to have crossed the fifty-percent fault threshold that forecloses recovery. This argument, however, reveals a misunderstanding of the issue, which is whether a plaintiff whose negligence did not contribute to an initial injury nevertheless can share liability for causing a subsequent, related injury. By answering that question affirmatively, we merely reiterate the basic principle that causation of injuries, rather than the relative timing of the parties' acts, determines whether contributory negligence applies. We do not suggest that a plaintiff like BP can be found liable for contributory negligence beyond the extent to which it partially caused its own injuries.

### C. Post-Judgment Interest

In the second appeal, which we have consolidated with the first, we must decide whether the accrual of post-judgment interest ended on the date MSI first tendered payment to BP or on the date MSI actually made payment into the court-maintained account. Since this issue requires us to interpret the federal post-judgment interest statute, 28 U.S.C. § 1961, which governs the issue in diversity cases, we review the district court's decision *de novo*. *United States v. Al-Zubaidy*, 283 F.3d 804, 810 (6th Cir.), *cert. denied*, 122 S. Ct. 2638 (2002). We agree with the district court and hold that post-judgment interest ceased to accrue on the date MSI unconditionally tendered payment of the full judgment amount.

In relevant part, 28 U.S.C. § 1961(b) provides that "[i]nterest shall be computed daily to the date of payment . . . ." Recently, we considered whether a plaintiff was

With this framework in mind, it is clear that BP experienced a number of injuries, among them a damaged fuel storage tank, a loss of fuel product, and damaged grounds at the storage facility. Viewed in terms of timing alone, BP is correct that all of its damages "flowed" from the initial physical damage to the tank. From the perspective of causation, however, that initial injury is distinct from the subsequent injuries associated with the leak. BP did not seek to recover damages from MSI for negligently damaging its tank by making a hole in it; it sued MSI for negligently causing the leak that resulted in extensive damages from the outflow of the fuel. Obviously, MSI alone caused the hole, but the fuel leak and the other injuries associated with it were the products of mixed causes. BP showed that MSI's negligence proximately caused the leak. MSI, in turn, presented evidence that BP had a duty to test the fuel tank before refilling it, that BP failed to test the tank, and that the leak would have been averted if BP had tested the tank. Thus, MSI proved that BP's own negligence in failing to test the tank before refilling it was also a proximate cause of the leak. Based on this evidence, the jury could have found that BP "contributed to the injury as a proximate cause thereof, and as an element without which the injury would not have occurred." *Id.* (citation omitted). Since both parties proximately caused the gasoline leak, the jury properly apportioned liability between BP and MSI according to their respective fault.

To further illustrate, BP's failure to test the tank should be distinguished from the other unreasonable acts that MSI attempted to prove at trial: that BP delayed in discovering the source of the leak and inefficiently conducted the cleanup operation. This conduct did not have a causal role in any of BP's injuries, since a more competent investigation or more efficient cleanup could not have prevented any of the injuries from occurring. This evidence, however, did relate to BP's failure to mitigate damages. As such, the district court could not have permitted the jury to apportion fault between the parties on this basis alone.

Before trial, BP settled its claims against St. Paul. The parties executed a "BuyBack and Release Agreement," in which St. Paul promised to pay BP $50,000 in exchange for BP's promise to release all of its claims against St. Paul. The agreement expressly provided that its terms were not to be construed as an admission of coverage or liability. The money was paid and St. Paul was dismissed from the case. Soon thereafter, BP also dismissed its claims against ASRR, DJA's insurer.

The district court conducted a jury trial on BP's negligence and breach of contract claims against both MSI and DJA. At the close of MSI's case, BP moved for judgment as a matter of law, dismissing MSI's defense that BP was guilty of contributory negligence. The district court denied the motion, and BP now cross-appeals from that decision. At the trial's conclusion, the jury returned a verdict exonerating DJA but finding MSI liable for negligence and breach of contract. The jury awarded BP $935,404 in damages on the negligence claim and $78,000 on the contract claim, but it also found BP liable for contributory negligence. Pursuant to Ohio's comparative negligence statute, the jury allocated sixty percent of the fault to MSI and forty percent to BP. The district court adjusted the damages awards and entered judgment against MSI, accordingly.

MSI then filed a motion to alter or amend the judgment on two grounds. First, MSI challenged the $78,000 judgment on the contract claim as duplicative of the judgment on the negligence claim. The district court agreed and vacated the jury's award of $78,000. BP did not appeal that decision. Second, MSI argued that BP's award on the negligence claim should be reduced by the $50,000 that BP received from St. Paul. The district court rejected this argument and denied the motion, reasoning that BP's claims against MSI and St. Paul were based on different injuries and thus were not subject to Ohio's statutory setoff rule. MSI appeals from the court's denial of its motion as to the $50,000 setoff.

As the prevailing party, BP moved for pre-judgment interest, post-judgment interest, and costs. The district court denied pre-judgment interest, awarded post-judgment interest, and granted a portion of BP's costs. On August 7, 2001, MSI tendered payment to BP in the amount of $603,695.54, along with a letter explaining that the check "represents full payment of the judgment rendered against Maintenance Services . . . along with costs and applicable post-judgment interest through Tuesday, August 7, 2001." Approximately one month later, BP returned the check to MSI, citing its fear that acceptance of "partial payment" could be construed as "payment in full or an accord and satisfaction." BP also expressed difficulty understanding MSI's computations and suggested that MSI should pay the funds into the district court pending resolution of the case. A few days later, MSI re-tendered the check along with an explanation of its computations. MSI refused to pay the money over to the court, but expressed its belief that acceptance of the payment would not jeopardize either party's appeal of the judgment. BP returned the check a second time, again communicating concern that acceptance of payment could threaten its pending appeal.

Eventually, MSI asked the district court to allow it to pay the amount into a court-maintained account. The district court granted the motion, but held that post-judgment interest had ceased to accrue as of August 7, 2001, the date MSI first tendered payment to BP. The district court reasoned that "[t]he purpose of post-judgment interest is to encourage payment by defendants." According to the court, "[o]nce Maintenance Services made the payment, the purpose for post-judgment interest cease[d]." BP appeals the order declaring that post-judgment interest ceased to accrue as of the date MSI first tendered payment.

court held that the plaintiff's own negligence, rather than the doctor's prior negligence, "proximately caused her injury." 554 N.E.2d at 945. *McCoy* adds little to the analysis, but even in that case, the court chose not to disturb the contributory negligence finding in part because the evidence showed that the plaintiff may have caused her own injuries. 590 N.E.2d at 41.

Contrary to BP's claim, our decision in *Petrolia Corp. v. Elam*, No. 89-1765, 1992 WL 31299 (6th Cir. Feb. 20, 1992) (unpublished disposition), in which we applied Michigan law, although not precedential, is instructive. In that case, the trial court had held that an attorney who negligently prepared a proxy statement relating to a proposed merger was not liable for the subsequent failure of the merger on the basis of the intervening decision by the plaintiff companies to terminate the merger. *Id.* at *2. We reversed and held that the attorney was liable for the failure of the merger, because "no additional act or omission by plaintiffs could have prevented the injury itself from coming to fruition." *Id.* at *3. The plaintiffs' decision to terminate the merger may have affected "the extent of damages flowing from the injury," but it did not insulate the defendant attorney from liability for the injury itself, since, in effect, the injury already had been caused by the time the plaintiffs acted. *Id.*

As these authorities indicate, we must decide this case by identifying BP's injuries and their causes, not simply by asking when events occurred. Therefore, applying Ohio's definition of contributory negligence, the district court's instruction in this case was proper if BP's unreasonable acts "'combined and concurred with the defendant's negligence and contributed to the injury as a proximate cause thereof, and as an element without which the injury would not have occurred.'" *Crawford*, 438 N.E.2d at 893 (citation omitted). Failure to mitigate becomes relevant only with respect to conduct that affected the level of damages but did not play a role in causing the underlying injuries.

In a later case, *Sorina*, 554 N.E.2d 943, the Ohio Court of Appeals addressed a situation in which a plaintiff suffered severe complications following an abortion. *Id.* at 944. The plaintiff accused her doctor of negligence in failing to anticipate post-procedure complications, and the doctor defended by emphasizing the plaintiff's failure to return to him for a checkup after beginning to experience complications. *Id.* In another cryptic opinion, without mentioning *Geiselman* or *Bird*, the court affirmed a grant of summary judgment in the physician's favor on the ground that the plaintiff's "own disregard for her health proximately caused her injury." *Id.* at 945. The court in *Sorina* thus ignored the timing of the parties' acts, opting instead to focus solely on the issue of proximate causation.

Finally, in *McKoy*, the appeals court cited *Bird*, but not *Sorina* or *Geiselman*, while articulating the plaintiff patient's argument as follows: "the trial court's instruction ignored the requirement that negligence on the part of a patient in a medical malpractice action must be contemporaneous with the fault of the defendant in order to constitute a bar to the recovery of damages." 590 N.E.2d at 41. In its opinion, the court seemed to endorse a strict rule of contemporaneity, but it did not base its decision on the rule. *Id.* Instead, the court pointed out that the plaintiff had failed to prove the physician's negligence in the first place. *Id.* In addition, evidence had been presented demonstrating the plaintiff's pre-treatment and post-treatment negligence, thus mooting the question of timing entirely. *Id.* In some respects, these cases are contradictory and inconclusive. For the purpose of deciding the issue before us, however, they indicate uniformly that the distinction between contributory negligence and mitigation of damages rests on principles of causation and injury, not timing. In *Geiselman*, the defendant had presented sufficient evidence that the plaintiff's negligence "approximately contributed to the injuries of which he complain[ed]." 25 Ohio St. at 87. Conversely, in *Bird*, there was no evidence that the plaintiff's negligence played any role in causing her injuries. 291 N.E.2d at 774. In *Sorina*, the

## II.  ANALYSIS

### A. Damages Setoff

The first issue is whether the district court erred in denying MSI's motion to alter or amend the judgment by reducing the damages award by $50,000 that BP received in settlement from St. Paul. "We generally review a denial of a motion to alter or amend the judgment under Rule 59(e) for an abuse of discretion." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998).

MSI contends that the district court abused its discretion by failing to reduce BP's damages award. According to MSI, any claim by BP against St. Paul arose only as a result of MSI's negligence in repairing Tank 20. Pursuant to Ohio's common law "single satisfaction" rule, the settlement proceeds must be deducted from the damages award to prevent a duplicative recovery. BP responds that MSI is not entitled to a setoff because St. Paul was not "liable in tort for the same injury" as MSI, as required by Ohio Rev. Code § 2307.32(F), since its claim against St. Paul only sought damages arising from St. Paul's failure to indemnify and defend BP in suits arising from the leak. Applying Ohio law, we agree with BP that a setoff is not required when the claims against the settling defendant and the judgment against the non-settling defendant involve different injuries.

"A federal court sitting in diversity applies the substantive law of the state in which it sits." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001). Ohio has two rules governing the interplay between damages awards and settlement payments involving codefendants. The first is Ohio Rev. Code § 2307.32(F), which provides:

When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the *same injury* or loss to person or property or the same wrongful death, the following apply:

(1) The release or covenant does not discharge any of the other tortfeasors from liability for the injury, loss, or wrongful death unless its terms otherwise provide, but it reduces the claim against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater.

(Emphasis added.) Under this provision, a non-settling defendant is entitled to a setoff for amounts paid in settlement by joint tort-feasors. *Id.* As its terms make clear, section 2307.32(F)(1) only applies to defendants who are jointly liable for the "same injury." *Id.* The Ohio Supreme Court recently held that this provision requires setoff only if there is an actual determination of the settling defendant's liability for causing the same injury, such as "a jury finding, a judicial adjudication, stipulations of the parties, or the release language itself." *Fidelholtz v. Peller*, 690 N.E.2d 502, 507 (Ohio 1998).

The second, closely related rule is the common-law "single satisfaction" rule: "[A]n injured party is entitled to only one satisfaction for his injuries, and . . . receipt of full compensation from one of several persons whose concurrent acts of negligence are the basis of a suit for damages for personal injuries releases all." *Seifert v. Burroughs*, 526 N.E.2d 813, 814 (Ohio 1988) (internal quotation marks, citation, and emphasis omitted). Thus, a plaintiff who receives full compensation for his injuries from one defendant cannot seek further compensation from another defendant. *Id.* Like the statutory rule, the common-law rule does not apply unless there has been a determination of the settling defendant's liability for the same injuries as those caused by the non-settling defendant. *In re Miamisburg Train Derailment Litig.*, 725 N.E.2d 738, 747 (Ohio Ct. App. 1999).

We need not resolve the parties' disagreement about which rule applies, because we conclude that neither rule requires

More recently, the Ohio Courts of Appeals have decided several similar medical malpractice cases, but with somewhat mixed results. In *Bird*, the defendant physician misdiagnosed the plaintiff's hand injury but instructed the plaintiff to return in three days for a second evaluation. 291 N.E.2d at 770-71. The plaintiff failed to return and instead saw a different physician. *Id.* at 771. When the plaintiff sued the defendant physician for malpractice, he sought and received a jury instruction on contributory negligence. *Id.* Without citing *Geiselman*, the appeals court reversed and reported its holdings as follows:

1. In a medical malpractice action, the negligence of the patient, to constitute a bar to the recovery of damages, must have been an active and efficient contributing cause of the injury; it must have been simultaneous and cooperating with the fault of the defendant; it must have entered into the creation of the cause of action, and have been an element in the transaction that constituted it.

2. Where the fault, if any, of the patient was subsequent to the fault of the surgeon, and merely aggravated the injury inflicted by the surgeon, it only affects the amount of damages recoverable by the patient.

*Id.* at (syllabus). While this language seems to assign considerable importance to the relative timing of the parties' acts, its real focus is on whether the plaintiff's acts helped cause her injuries or merely aggravated the damages associated with those injuries. The facts in *Bird* make this plain, since expert testimony established that the physician's error was irreversible days before the plaintiff failed to return for a follow-up examination with the defendant physician. *Id.* at 774. The court based its decision on the defendant's failure to prove causation, not the fact that the defendant's negligence preceded the plaintiff's unreasonable acts.

injuries initially caused by a physician's negligence. *See, e.g., Ostrowski v. Azzara*, 545 A.2d 148 (N.J. 1988); *Bird v. Pritchard*, 291 N.E.2d 769 (Ohio Ct. App. 1973). The present case contains an analogous peculiarity, in that MSI's negligence alone caused the initial injury, the hole in the tank, but BP's subsequent failure to test the tank contributed to the ensuing injury, the fuel leak.

BP urges us to seize upon that peculiarity and draw a bright line between contributory negligence and mitigation of damages based on the timing of the parties' unreasonable acts. But BP fails to cite a single Ohio case, much less one that points in that direction. Our own analysis of Ohio law indicates that basic principles of causation and injury, not simplistic notions of timing, must govern the decision on this issue. A meandering line of Ohio medical malpractice cases bears out this conclusion. *See Geiselman v. Scott*, 25 Ohio St. 86 (1874); *McKoy v. Furlong*, 590 N.E.2d 39 (Ohio Ct. App. 1990); *Sorina v. Armstrong*, 554 N.E.2d 943 (Ohio Ct. App. 1988); *Bird*, 291 N.E.2d 769.

In *Geiselman*, a very old case, the patient sued his physician for negligently treating his "swollen and diseased foot and ankle," and the physician responded with evidence that the plaintiff had ignored directions to keep his foot in "absolute rest" following treatment. 25 Ohio St. at 87, 88. Although the plaintiff's alleged negligence occurred after the physician's alleged malpractice, the Ohio Supreme Court held that the trial court correctly instructed the jury on contributory negligence:

> A surgeon assumes to exercise the ordinary care and skill of his profession, and is liable for injuries resulting from his failure to do so; yet if his patient neglects to obey the reasonable instructions of the surgeon, and thereby contributes to the injury complained of, he can not recover for such injury.

*Id.* at (syllabus 1).

setoff in this case. Simply stated, there was no determination of St. Paul's liability for causing the same injuries as MSI. There was no jury finding, judicial decision, or stipulation respecting St. Paul's liability, and the release stated expressly that its terms did not constitute an admission of liability. More to the point, all the claims against St. Paul focused on whether St. Paul breached its contractual obligation to indemnify and defend against suits resulting from the gasoline leak. In contrast, the jury found MSI liable for causing the leak itself. Because the district court had no basis to conclude that MSI and St. Paul shared liability for the same injuries, the court did not abuse its discretion in rejecting MSI's motion to alter or amend the judgment.

## B.  Contributory Negligence

BP's cross-appeal requires us to decide whether the district court erred in denying BP's motion for judgment dismissing, as a matter of law, MSI's defense that BP was guilty of contributory negligence. "We review the district court's decision on a motion for judgment as a matter of law *de novo* and use the same standards as the district court." *Perceptron, Inc. v. Sensor Adaptive Machs., Inc.*, 221 F.3d 913, 918 (6th Cir. 2000). "In diversity cases, the denial of a motion for judgment as a matter of law based upon the sufficiency of the evidence is governed by the law of the forum state." *Id.* Ohio's standard for directed verdicts states:

> "The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination . . . ."

*Aetna Cas. and Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 532 (6th Cir. 2000) (quoting *Posin v. A.B.C. Motor Court Hotel, Inc.*, 344 N.E.2d 334, 338 (Ohio 1976)).

BP makes two, slightly distinct arguments. First, BP contends that, as a matter of law, its failure to test Tank 20 following MSI's faulty repairs could not constitute contributory negligence because it did not occur until after MSI's negligent acts were complete. Second, according to BP, the only injury caused by MSI's negligence was the hole in Tank 20's floor; the fuel leak and accompanying mess merely represented the damages "flowing" from that injury. BP argues that because it played no part in creating the hole, its failure to test the tank for leaks, at most, exacerbated the resulting damages, thereby raising a question of mitigation, but not a question of contributory or comparative negligence. MSI counters with a single argument: BP sued based on the "gasoline leak and the associated costs of recovery and clean-up," not physical damage to Tank 20. Because BP's negligence helped cause the leak, the issue of contributory negligence was properly before the jury. We agree with MSI that regardless of the timing of the parties' acts, BP's failure to test the tank contributed to the cause of the relevant injury, the leak. The district court therefore did not err in denying BP's motion for judgment as a matter of law.

Ohio defines contributory negligence as "'any want of ordinary care on the part of the person injured, which combined and concurred with the defendant's negligence and contributed to the injury as a proximate cause thereof, and as an element without which the injury would not have occurred.'" *Crawford v. Halkovics*, 438 N.E.2d 890, 893 (Ohio 1982) (quoting *Brinkmoeller v. Wilson*, 325 N.E.2d 233, 235 (Ohio 1975)). Like many other states, Ohio has replaced its traditional contributory negligence doctrine with a statutory comparative negligence scheme. Ohio Rev. Code § 2315.19(A)(2). Within this scheme, plaintiffs found more than fifty percent at fault recover nothing; all other plaintiffs recover damages proportionate to their fault. *Id.* In addition,

Ohio applies a traditional mitigation of damages doctrine, under which "[o]ne injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort." *Johnson v. Univ. Hosps. of Cleveland*, 540 N.E.2d 1370, 1377 (Ohio 1989) (internal quotation marks, citation, and emphasis omitted).

As the quoted standards reveal, distinguishing between contributory or comparative negligence and mitigation of damages can be challenging. This difficulty is not unusual, however, as the two doctrines "are in reality the same, and . . . the distinction which exists is rather one between damages which are capable of assignment to separate causes, and damages which are not." W. Page Keeton, *et al.*, *Prosser & Keeton on the Law of Torts* § 65, at 459 (5th ed. 1984). As BP points out, the suggestion often is made that "comparative fault or contributory negligence occurs *before* injury, while a failure to minimize damages occurs *after*." Dan B. Dobbs, *Law of Remedies* § 3.9, at 385 (2d ed. 1993); *see* Prosser & Keeton on Torts § 65, at 458. For example, in *Nilson-Newey & Co. v. Ballou*, 839 F.2d 1171 (6th Cir. 1988), a Kentucky case in which the defendant argued mitigation of damages in an effort to cure his failure to raise contributory negligence as an affirmative defense, we stated that "the duty to mitigate arises only after the defendant's tortious conduct, not before it." *Id.* at 1175.

In contexts presenting unusual or complex issues of fault and causation, however, simplistic notions of timing sometimes fail to yield clear answers. Perhaps the most notable example is the so-called "seat-belt defense" cases, in which the injured parties' failure to properly use a seat belt is an issue that defies convenient classification as either failure to mitigate or contributory negligence. *See* Fowler V. Harper, *et al.*, *The Law of Torts* § 22.10, at 339 n.17 (2d ed. 1986); *see also* Dobbs, *Law of Remedies* § 3.9, at 386. A similar difficulty arises in medical malpractice cases in which a patient's post-procedure self-neglect contributes to the