ATTORNEY FOR APPELLANT
Robert D. Brown
Spangler, Jennings & Dougherty, P.C.
Merrillville, Indiana

ATTORNEYS FOR APPELLEE
Arend J. Abel
Cohen & Malad, LLP
Indianapolis, Indiana

Thomas A. Clancy
Jeanine L. Stevens
Clancy & Stevens
Chicago, Illinois

# In the
# Indiana Supreme Court

No. 45S03-0505-CV-239

ROBERT CAVENS, M.D.,

*Appellant (Defendant below),*

v.

TIM ZABERDAC,

*Appellee (Plaintiff below).*

Appeal from the Lake Superior Court, No. 45D04-9807-CP-534
The Honorable Gerald N. Svetanoff, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 45A03-0312-CV-516

**June 22, 2006**

**Dickson, Justice.**

The primary appellate issue in this medical malpractice case is whether the trial court erred by prohibiting the physician from asserting the patient's conduct prior to the alleged malpractice as a contributory negligence defense. We affirm the judgment of the trial court.

Following the death of his wife, Peggy Miller, Tim Zaberdac, individually and as admin-

istrator of her estate, commenced this medical malpractice action against Robert Cavens, M.D., and others. The case proceeded to trial only against the doctor, who asserted his patient's contributory negligence as an affirmative defense. At the conclusion of the evidence, the trial court granted the plaintiff's motion for judgment on the evidence, which sought to prevent the doctor from asserting the defense of contributory negligence. The trial court also ordered that defense counsel could not argue that the patient's conduct was the proximate cause of her death. This appeal follows a jury verdict for the plaintiff in the sum of $1,570,000, which the court reduced to $750,000 pursuant to the maximum allowed by the Indiana Medical Malpractice Act.[1]

The defendant challenges the trial court's actions (1) foreclosing his defense of contributory negligence; (2) precluding the doctor from arguing that his patient's conduct proximately caused her death; and (3) rejecting his tendered instruction to the effect that, if his patient would have died regardless of the doctor's error, the verdict should be in his favor.

The parties do not dispute that there was evidence to support the following facts. Peggy Miller had suffered severe and persistent asthma, for which she was regularly treated by Dr. Mary E. Strek, M.D., a pulmonologist, who had specifically instructed Peggy regarding the use of medicine and the need for emergency room care in the event of significant asthma symptoms. She had been treated for asthma attacks in the hospital or emergency room on at least eight different occasions. On July 21, 1996, Peggy began experiencing profound shortness of breath around 7:00 a.m. Over the course of the morning, Peggy took several doses of medication, with limited success, and finally called a friend for help. The friend arrived quickly, and they called an ambulance at 11:29 a.m. The ambulance took Peggy to a hospital emergency room, where Dr. Cavens, the emergency room physician gave her medications and arranged for her to receive an EKG test. But Peggy went into cardiac arrest and died at approximately 11:45 p.m.

Expert medical witnesses disagreed at trial regarding whether Dr. Cavens complied with the applicable standard of care and whether her death resulted from any failure to comply. Physicians testifying on behalf of Dr. Cavens expressed the opinion that Peggy improperly used her

---

[1] *See* Ind. Code § 34-18-14-3. The Act limits the total amount recoverable for an injury or death of a patient to $500,000 for malpractice occurring prior to January 1, 1990; $750,000 for malpractice injuries between December 31, 1989, and July 1, 1999; and $1,250,000 for malpractice after June 30, 1999.

medications in excess of their prescribed doses, which probably aggravated her condition, and that Peggy unreasonably delayed seeking medical treatment and emergency room care, which decreased her chances of surviving.

## Contributory Negligence

Dr. Cavens's first argument on appeal is that the trial court erred when it granted the plaintiff's motion for judgment on the evidence on the issue of contributory negligence.[2]  Dr. Cavens contends that he should have been allowed to present his defense asserting contributory negligence based on evidence of Peggy's excessive use of medication and delay in seeking treatment.

The standard of review for a challenge to a ruling on a motion for judgment on the evidence is the same as the standard governing the trial court in making its decision.  Smith v. Baxter, 796 N.E.2d 242, 243 (Ind. 2003); Kirchoff v. Selby, 703 N.E.2d 644, 648 (Ind. 1998); Bals v. Verduzco, 600 N.E.2d 1353, 1357 (Ind. 1992).  Judgment on the evidence is appropriate "[w]here all or some of the issues . . . are not supported by sufficient evidence . . . ."  Ind. Trial Rule 50(A); *see also* Smith, 796 N.E.2d at 243; Kirchoff v. Selby, 703 N.E.2d at 648.  A reviewing court looks only to the evidence and the reasonable inferences drawn most favorable to the non-moving party, and the motion should be granted only where there is no substantial evidence supporting an essential issue in the case.  Smith, 796 N.E.2d at 243; Kirchoff, 703 N.E.2d at 648; Clark v. Wiegand, 617 N.E.2d 916, 918 (Ind. 1993).  If there is evidence that would allow reasonable people to differ as to the result, judgment on the evidence is improper.  Smith, 796 N.E.2d at 243.  Where the issue involves a conclusion of law based on undisputed facts, the reviewing court is to determine the matter as a question of law in conjunction with the motion for judgment on the evidence, and to this extent, the standard of review is de novo.  City of Hammond v. Cipich, 788 N.E.2d 1273, 1279 (Ind. Ct. App. 2003); *see also* MacLafferty v. MacLafferty, 829 N.E.2d 938, 941 (Ind. 2005).

---

[2] The Comparative Fault Act does not apply to medical malpractice suits.  *See* Ind. Code 34-51-2-1.  Thus the common law defense of contributory negligence, if proven, bars a patient from recovering any damages for injuries or losses that may have resulted from a physician's medical negligence.

Under Indiana law, the historic common law defense of contributory negligence remains available to defendants in cases alleging medical malpractice. The Indiana Comparative Fault Act replaced the defense of contributory negligence, which completely bars a plaintiff from any recovery, with a system providing for the reduction of a plaintiff's recovery in proportion to the plaintiff's fault, but this Act does not apply to actions for medical malpractice. *See* Ind. Code 34-51-2-1. The contributory negligence defense has been applied in medical malpractice cases. *See, e.g.,* Mem'l Hosp. of South Bend, Inc. v. Scott, 261 Ind. 27, 300 N.E.2d 50 (1973) (defense alleged negligence of plaintiff in use of hospital toilet facilities, resulting in severe burns from scalding water); Fall v. White, 449 N.E.2d 628, 632-34 (Ind. Ct. App. 1983) (defendant alleged patient's failure to provide complete and accurate information, and failure to follow defendant doctor's instructions), *trans. denied.* A patient may not recover in a malpractice action where the patient is contributorily negligent by failing to follow the defendant physician's instructions if such contributory negligence is simultaneous with and unites with the fault of the defendant to proximately cause the injury. Harris v. Cacdac, 512 N.E.2d 1138, 1139-40 (Ind. Ct. App. 1987), *trans. denied.*

Dr. Cavens offers that "pre-treatment actions by a patient which merely create the need for treatment cannot, generally, be raised as contributory negligence," but then seeks to distinguish this case because "Peggy's contributory negligence in taking excessive amounts of her medication and in failing to timely seek medical treatment did not create the need for medical treatment." Appellant's Br. at 18 He urges that "it was Peggy's asthmatic episode that created the need for medical treatment." *Id.* Dr. Cavens characterizes his own conduct as "part of the same event" as Peggy's conduct. *Id.* The effect of Dr. Cavens's argument is that when a person seeks medical attention for a medical condition after having been negligent in caring for the condition, a doctor who provides subsequent treatment should not be liable for any ensuing injuries or aggravation caused by the doctor's treatment, even if it falls below the applicable standard of care. We disagree.

Permitting medical malpractice defendants to assert the defense of contributory negligence by reason of a patient's negligence prior to the defendant physician's treatment of the pa-

4

tient conflicts with a long-standing common law principle: "It is a staple of tort law that the tort-feasor takes her victim as she finds him." <u>Bemenderfer v. Williams</u>, 745 N.E.2d 212, 218 (Ind. 2001). Similarly, in <u>Dunkelbarger Constr. Co. v. Watts</u>, 488 N.E.2d 355, 358 (Ind. Ct. App. 1986), the court described as "black letter law" a jury instruction advising that a plaintiff "will be entitled to recover where the negligence of the defendants caused an injury even though by reason of previous physical or diseased condition such injuries are more serious, or the person is more susceptible to injury, or death is directly hastened." *See also* <u>Brokers, Inc. v. White</u>, 513 N.E.2d 200, 203-05 (Ind. Ct. App. 1987); <u>Johnson v. Bender</u>, 174 Ind. App. 638, 644-45, 369 N.E.2d 936, 940 (1977), *trans. denied*. Indeed, this principle is embodied in Section 461 of the Restatement (Second) of Torts (1965):

> The negligent actor is subject to liability for harm to another although a physical condition of the other which is neither known nor should be known to the actor makes the injury greater than that which the actor as a reasonable man should have foreseen as a probable result of his conduct.

It is people who are sick or injured that most often seek medical attention. Many of these infirmities result, at least in part, from the patients' own carelessness (e.g. negligent driving or other activities, failure to regularly exercise, unhealthy diet, smoking, etc.). To permit healthcare providers to assert their patients' pre-treatment negligent conduct to support a contributory negligence defense would absolve such providers from tort responsibility in the event of medical negligence and thus operate to undermine substantially such providers' duty of reasonable care.

Numerous other jurisdictions agree that, where a patient seeks medical treatment for a condition that may have arisen in whole or in part from the patient's own negligence, such negligence is not available as a defense to claims alleging medical malpractice in providing subsequent treatment. In <u>Jensen v. Archbishop Bergan Mercy Hosp.</u>, 236 Neb. 1, 15, 459 N.W.2d 178, 186-87 (1990), where a patient failed to follow the instructions of his doctor to lose weight, and his weight problem was causally related to a pulmonary embolism for which he obtained negligent treatment, the defense of contributory negligence was held inapplicable in a medical malpractice case "when a patient's conduct provides the occasion for medical attention, care, or treatment . . . or when the patient's conduct contributes to an illness or condition for which the patient seeks the medical attention, care, or treatment on which a subsequent medical malpractice

5

claim is based." Likewise in <u>Eiss v. Lillis</u>, 233 Va. 545, 553, 357 S.E.2d 539, 543-44 (1987), the patient's contributory negligence was not available as a defense because the patient's conduct occurred before rather than contemporaneously with the doctor's treatment. The court in <u>Eiss</u> noted that "[t]he law is not concerned with the existence of negligence in the abstract; the law is only concerned with negligence that is the proximate cause of the injury complained of by the plaintiff." <u>Eiss</u>, 233 Va. at 553, 357 S.E.2d at 543.

Similarly, in jurisdictions that look to comparative fault rather than contributory negligence, many have held that a patient's conduct prior to treatment should not be considered for comparative fault purposes. *See, e.g.*, <u>Mercer v. Vanderbilt Univ., Inc.</u>, 134 S.W.3d 121, 125 (Tenn. 2003) (holding that "fault may not be assessed against a patient in a medical malpractice action in which a patient's negligent conduct provides only the occasion for the medical attention, care, or treatment which is the basis for the action," where the defendant doctor was treating the plaintiff patient for injuries sustained in a car accident negligently caused by the plaintiff who was driving while intoxicated); <u>Whitehead v. Linkous</u>, 404 So. 2d 377, 379 (Fla. Dist. Ct. App. 1981) (holding that conduct by the plaintiff contributing to his illness or medical condition and furnishing the occasion for medical treatment is not a defense to medical malpractice, where a doctor negligently treated a man who had attempted to commit suicide); <u>Matthews v. Williford</u>, 318 So. 2d 480, 483 (Fla. Dist. Ct. App. 1975) ("[C]onduct of a patient which may have contributed to his illness or medical condition, which furnishes the occasion for medical treatment . . . simply is not available as a defense to malpractice which causes a distinct subsequent injury— here, the ultimate injury, wrongful death."). *But see* <u>Krklus v. Stanley</u>, 359 Ill. App. 3d 471, 480, 833 N.E.2d 952, 960 (2005) (recognizing an exception to the general rule that the patient's conduct prior to treatment should not be considered in assessing damages, holding that "comparative negligence applies when the plaintiff's negligence is a legally contributing cause of his harm if, but only if, it is a substantial factor in bringing about his harm and there is no rule restricting his responsibility for it.") (quotation marks omitted).

The convergence of the negligence of both the patient and the physician is a recurring rationale in decisions addressing the question, which is often discussed in the context of whether the patient's alleged negligent conduct was a proximate cause of the claimed injuries. "[I]n order

to constitute a bar to recovery, contributory negligence must be a proximate cause of the injury. It must unite in producing the injury, and thus be 'simultaneous and cooperating with the fault of the defendant . . . (and) enter into the creation of the cause of action.'" Harris, 512 N.E.2d at 1139-40 (quoting 61 Am.Jur.2d *Physicians and Surgeons* § 302, p. 449 (1981)) (other included citations omitted); s*ee also, e.g.*, Sendejar v. Alice Physicians and Surgeons Hosp., Inc., 555 S.W.2d 879, 885 (Tex. Civ. App. 1977); Ponirakis v. Choi, 262 Va. 119, 125, 546 S.E.2d 707, 711 (2001); Leadingham v. Hillman, 224 Ky. 177, 5 S.W.2d 1044, 1045 (1928); Bird v. Pritchard, 33 Ohio App. 2d 31, 32, 291 N.E.2d 769, 771 (1973).

Dr. Cavens also asserts that "[h]ad Peggy presented to her treating pulmonologist, Dr. Strek, in the exact same manner in which she presented to Dr. Cavens, there can be no doubt that Dr. Strek would be entitled to argue contributory negligence." Appellant's Br. at 19. He argues that the identity of the treating physician should not matter because the patient's "conduct is negligent regardless of the status of the physician defendant." *Id.* We decline to address the hypothetical whether the treating pulmonologist could have asserted contributory negligence. The principle remains that a physician is subject to liability for harm to a patient notwithstanding that the patient has a physical condition that may make the patient's injury greater than what a reasonable doctor should have foreseen as a probable result of his conduct. *See* Restatement (Second) of Torts § 461 (1965). The alleged negligence of Peggy Miller was not "simultaneous and cooperating" with the alleged medical negligence of Dr. Cavens. She presented to Dr. Cavens in the midst of an acute asthmatic attack, and the doctor then had the duty to provide reasonable medical care under the circumstances. He cannot avoid responsibility for a failure to fulfill such duty by claiming that his patient's prior negligence caused or contributed to the dire condition that necessitated her treatment. This action alleges the medical negligence of Dr. Cavens only for his treatment of this medical emergency, not for any medical care provided by him for Peggy Miller's prior course of pulmonary treatment.

There was no evidence in this case that Peggy Miller was under treatment by Dr. Cavens at the time of her alleged excessive use of medication and delay in seeking treatment. Thus there is insufficient evidence supporting the issue of contributory negligence. We find as a matter of law that any alleged negligence of Peggy Miller, the plaintiff's decedent, that may have contrib-

7

uted to the illness that brought her to the defendant, Dr. Cavens, for treatment, does not constitute a basis for a defense of contributory negligence. The trial court did not err in granting the plaintiff's motion for judgment on the evidence preventing Dr. Cavens from asserting the defense of contributory negligence.

## Limitation of argument

Dr. Cavens also contends that the trial court erroneously prevented him from arguing that Peggy Miller's conduct was the sole proximate cause of her death. This contention is not based on any rulings on jury instructions, but rather relates to comments of the trial court regarding the scope of closing argument. After explaining its reasons for granting the plaintiff's motion for judgment on the evidence on the issue of contributory negligence, the court suggested a brief break before the instruction conference. The following colloquy then occurred:

> [DEFENSE COUNSEL]: Your Honor, might I ask for a little bit of clarification with respect to the extent that I'll be able to argue proximate cause related to –
>
> THE COURT: Well, the Court has just indicated there's no proximate cause here. Certainly, you can argue on the basis that, you know, there's certain circumstances that apparently occurred, but beyond that, as a matter of law the Court has made a determination that there is no proximate cause here, because there was no relationship between the doctor and the patient prior to the time the patient came into the emergency room.
>
> [DEFENSE COUNSEL]: Thank you. I just wanted a clarification. I wasn't sure you were saying as a matter of law there was no proximate cause also, as well as contributory negligence.
>
> THE COURT: Right. I mean, if you don't have contributory negligence here, you can't have proximate cause. They relate to each other. I mean, if the doctor undertook his care of the patient, and then you're going to argue that there's some type of proximate cause between what she did before the relationship ensued and what the doctor did after the relationship ensued, then you're circumventing what the Court has indicated here.
>
> [DEFENSE COUNSEL]: I just wanted to—thank you very much.

Tr. at 1059-60. At this point, a recess was declared and the parties met with the trial judge in chambers for a final instruction conference.

Significantly, the defense was seeking only a clarification. It did not take issue with the

8

court's answer. It did not object to the trial court's response. There was no challenge to the court's statement, no argument presented suggesting that the defense believed the court's view to be legally incorrect. Issues not raised at the trial court are waived on appeal. Reemer v. State, 835 N.E.2d 1005, 1007 n.4 (Ind. 2005); Ealy v. State, 685 N.E.2d 1047, 1050 (Ind. 1997). In order to properly preserve an issue on appeal, a party must, at a minimum, "show that it gave the trial court a bona fide opportunity to pass upon the merits of the claim before seeking an opinion on appeal." Endres v. Ind. State Police, 809 N.E.2d 320, 322 (Ind. 2004). We find this issue to have been procedurally defaulted.

## Refusal of Tendered Instruction

The defendant contends that the trial court erred in refusing one of his tendered jury instructions, which stated:

> If you find from a fair preponderance of the evidence that Peggy Miller's injuries and damages would have occurred regardless of the type of treatment rendered by Robert Cavens, M.D., in this case, then your verdict should be for the defendant.

Appellant's App'x. at 88. This instruction, according to the defendant, "required a verdict in his favor in the event the jury found that Peggy would have died regardless of Dr. Cavens's conduct." Appellant's Br. at 27.

The defendant argues that the evidence established that "Peggy was unfortunately going to die regardless of the treatment provided by Dr. Cavens." Appellant's Br. at 27. He asserts that a similar instruction was approved by the court in Fall, 449 N.E.2d at 631, and by the court in Hartman v. Mem'l Hosp. of South Bend, 177 Ind. App. 530, 533, 380 N.E.2d 583, 585 (1978). In concluding that the trial court did not err in giving a substantially identical instruction, the court in Fall explained, "[I]f death occurs no matter what care is provided, there is no causation, and the jury should find for the defendant." 449 N.E.2d at 631. The challenged instruction in Hartman informed the jury of the plaintiff's burden to prove that the defendant's breach of duty "proximately caused the plaintiff's decedent's death" and that the plaintiff "may not recover" damages "which you find would have occurred no matter what nursing and hospital care was rendered." 177 Ind.App. at 533, 380 N.E.2d at 585. Upholding the giving of the instruction, the

9

Hartman court emphasized the necessity for a "causal connection" between the death and the hospital's care. *Id.* at 534, 380 N.E.2d at 586.

In both Fall and Hartman, the Court of Appeals declined to reverse in cases where the trial courts had given the instruction. But in the present case, the issue is different: here the defendant asks us to find that the trial court erred in refusing to give the instruction.

"In reviewing a trial court's decision to give or refuse a tendered instruction, this Court considers whether the instruction (1) correctly states the law, (2) is supported by the evidence in the record, and (3) is covered in substance by other instructions." Wal-Mart Stores, Inc. v. Wright, 774 N.E.2d 891, 893 (Ind. 2002); Davenport v. State, 749 N.E.2d 1144, 1150 (Ind. 2001). If the challenge to a jury instruction is that it does not correctly state the law, we will review the instruction de novo; but if the challenge is that the instruction is not supported by the evidence in the record or that the substance is not covered by other instructions, we will only reverse if the trial court has abused its discretion. Wright, 774 N.E.2d at 893-94.

The determinative issue here is whether the tendered instruction was covered in substance by other instructions. Among the court's final instructions, we find the following:

> The law does not require that a physician guarantee that he will make an accurate assessment, or that the patient will have no complications or even that they will obtain a good result. *The fact the Peggy Miller died is not, of itself, evidence that Robert Cavens, M.D., was negligent.*

Instruction No. 21, Appellant's App'x. at 112 (emphasis added).

> You must determine the total amount of money that would fairly compensate the plaintiff for those elements of damage that you find were proven by a preponderance of the evidence *to have resulted from the negligence of the defendant*. . . . If you are satisfied from a preponderance of the evidence that physical injury was *caused by the defendant's negligence,* you should not decline to award some amount by way of general damages. . . .

Instruction No. 25, *Id.* at 116 (emphasis added).

> You are to consider the question of damages only if you have decided that the defendant was negligent and *that this negligence was the proximate cause of Peggy Miller's death.*

Instruction No. 26, *Id.* at 117 (emphasis added).

10

"Proximate cause" is that cause which produces the death complained of and without which the result would not have occurred. That cause must lead in a natural and continuous sequence to the resulting death unbroken by any intervening cause.

Instruction No. 11, *Id.* at 102.

Applying an abuse of discretion standard, we find that the defendant's tendered instruction, advising that the plaintiff could not recover if Peggy Miller's death would have occurred regardless of the type of treatment provided by Dr. Cavens, was sufficiently covered in substance by the foregoing final instructions. These final instructions informed the jury that, for the plaintiff to recover, a preponderance of the evidence must prove that Peggy Miller's death was caused by the negligence of the defendant, and that the mere fact that she died is insufficient. We decline to find that the trial court abused its discretion in refusing to give the defendant's tendered instruction.

### Conclusion

Concluding that the trial court was correct in granting the plaintiff's motion for judgment on the evidence as to the issue of contributory negligence, that the defendant may not challenge on appeal a trial court ruling that he did not challenge at trial, and that the trial court did not abuse its discretion in refusing to give a tendered instruction, we affirm the judgment of the trial court.

Sullivan, Boehm, and Rucker, JJ., concur. Shepard, C.J., concurs with separate opinion.

**SHEPARD, Chief Justice, concurring.**

I think the jury in this case rendered its decision under a misapprehension of the applicable law. I join in affirming only because of procedural default.

I agree with what Justice Dickson has written about contributory negligence and proximate cause as they apply to this case and other similar fact patterns. And I agree with some hesitation that a trial court does not abuse its discretion when it decides to refuse an instruction saying there can be no recovery if the jury believes the patient's own negligence was the proximate cause of her injuries, though I think it is a helpful instruction and I wish it had been given here.

Refusing to give such an instruction would typically not be fatal to the jury's ability to focus on the patient's acts as a potential proximate cause. The standard instructions about the plaintiff's need to prove proximate cause would legitimize counsel's arguments to the jury about whether it was patient or doctor who caused the death.

The jury could not hear that argument in this case, of course, because the trial court told counsel it would not be permitted. Counsel and client were entitled to make this argument. Affirming on the basis of procedural default is a harsh result, but I join my colleagues in holding that it is the correct one.